## BAKEN v. FOX *et al.*

No. 4541.   Opinion Filed November 2, 1915.

On Petition for Rehearing. February 29, 1916. ' Second Petition for Rehearing Denied May 9. 1916. '

(157 Pac. 340.)

1. **INFANTS—Lease of Realty—Validity.** 'A lease of real estate, belonging to a minor, made by the father of such minor, who was not the administrator. executor, guardian, or curator of the minor, and which was not approved by the county court, or judge, having jurisdiction of the estate, is void.

2. **INDIANS—Inherited Allotment—Lease by Guardian—Validity.** A lease. made by the guardian or curator of a full-blood Choctaw minor Indian, on the 12th day of April, 1906. of an inherited Indian allotment, belonging to such minor, and not approved by the county court, or judge. having jurisdiction of the estate of said minor, is void, as in violation of section 1 of the Indian Appropriation Act of 1905 (Act of Congress, March 3, 1905, c. 1479, 33 Stat. 1060; Fed. Stat. Ann. vol. 10, p. 142), which·provides ·that no lease by any administrator. executor. guardian. or curator (of certain minor Indians) shall be valid or enforceable without the approval of the court having jurisdiction of the proceedings.

3. **INDIANS — Lands — Conveyances—Validity.** Littie Hickman, a full-blood Choctaw Indian, died in 1903. intestate, before allotment, leaving one child, the only heir, plaintiff herein, also a full-blood Choctaw. The government census card shows that she was seven years old on the 20th day of April, 1899. The administra-'tor. who was also a full-blood Choctaw. at the instance of defendant Fox, filed on an allotment for the deceased, on the 21st day of December, 1904. and the plaintiff herein became the sole owner thereof, by inheritance. On the same day the allotment was filed on, the administrator made a five-year lease of the land to Fox, and at the same time a contract of sale was made whereby Fox was to buy the land for $1.050. On the 12th day of April, 1906, when the plaintiff was under 16 years of age, Fox obtained a deed to the land from her, for the stated consideration of $1,550. After that, Fox had the administrator appointed curator of the estate of plaintiff, and on the 17th day of November, 1906, took a new lease from the curator. On the 20th day of April, 1910. the day plaintiff arrived at her majority, by the census card. although the evidence clearly shows she was not that

old, Fox took another deed from her, paying her at. that time $500, and taking a receipt for $1,672.39, which included the money he claimed to have previously paid on the leases; but the amount was denied by plaintiff's father, who was the administrator and curator, above referred to. At that time the land was worth $2,500 to $4,000. None of the foregoing leases, contracts, or deeds were approved by the county court, or judge, having jurisdiction of the estate. Immediately after receiving the last deed from plaintiff, Fox conveyed the land to defendant Carlock, by quitclaim deed, and on the 7th day of June, 1910, Carlock obtained another deed from plaintiff without paying her any further or other consideration, and procured the last deed to be approved by the county court. **Held** that, although executed at different times, all the leases, contracts and deeds, made with and to defendant Fox, were one and the same transaction, and for the same consideration, and were fraudulent and void, as violative of the several acts of Congress relative thereto. And **held,** further, that the conveyances to defendant Fox being absolutely void, his deed to defendant Carlock was also void and conveyed no title to the land; and, **held,** further, that the plaintiff having arrived at her majority, as evidenced by the government census card, on the 10th day of April, 1910, the action of the county court in attempting to approve the deed from plaintiff to defendant Carlock, made on the 7th day of June, 1910, without consideration, was without jurisdiction and void.

(Syllabus by Robberts. C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Carsey Baken against F. M. Fox and another.    Judgment for defendants, and plaintiff brings error.    Reversed and remanded, with directions.

*Johnson & McGill* and *J. B. Moore,* U. S. Probate Atty., for plaintiff in error.

*H. A. Ledbetter,* for defendants in error.

Opinion by ROBBERTS, C.    The parties will be designated plaintiff and defendants, the same as below. This case comes from the district court of Carter county, and is an action to set aside a deed alleged to have been obtained by fraud, alleging that said deed is void for want

of consideration; and, further, that the contract for the execution of the deed was entered into and made at a time when the plaintiff was less than 18 years of age. The evidence shows that Littie Hickman, the mother of plaintiff, Carsey Baken, died in 1903, before allotment, and Lyman Baken filed on the land in controversy as her administrator. Carsey, who was her only child and heir, and, of course, her father and mother, were full-blood Choctaw Indians. Baken filed on the land on the 21st day of December, 1903, and on the same day, as administrator, made a five-year lease of said land to the defendant Fox. The lease provided for a consideration of $180 a year. At the same time, a contract of sale from Baken to Fox was executed, whereby Fox was to buy the land for a consideration of $1,050. On the 12th day of April, 1906, at a time when Carsey Baken, plaintiff, was less than 16 years of age, as a matter of fact, and also as shown by the census card, Fox obtained a deed from her to the same land. The consideration named in the deed was $1,550, but the evidence shows that the same was not paid. After that, Fox had Lyman Baken, the father of Carsey, appointed curator of her estate, and on the 17th day of November, 1906, he took a new lease from him as curator, for a period of five years, reciting a consideration of $100 a year. On the 20th day of April, 1910, Fox took another deed from Carsey, paying her therefor at the time $500, and taking a receipt for the money he claimed to have paid her previously thereto, including all moneys paid as rentals and lease money. None of these contracts or leases were ever approved by the court or judge having jurisdiction of her estate. The evidence is conflicting as to the amount actually paid on these leases. Fox claims to have paid $180 a year, while

Lyman Baken testified that he paid only $50 a year. Fox testified that the payment checks were lost. At the time he took the last deed for the premises, all of the payments made by him upon the leases were included as a part of the purchase price of the land, and in 1906, 1907, 1908, and 1909, while Carsey was a minor, Fox paid to her father, according to his evidence, approximately $1,100, and on the 28th day of April, 1910, at the time he claims that Carsey arrived at her majority, and at the time he took the last deed from her, he paid her $500 in cash and draft, and took her receipt for $1,672.39, which he claimed was the total amount paid by him for the land, including the lease money. Later on in the same year, Fox sold the land to defendant Carlock for $2,200, and gave him a quitclaim deed, and on the 7th day of June, 1910, Carlock obtained a new deed from Carsey without giving her any further consideration, and later on he had that deed approved by the county court having jurisdiction of the estate. All these transactions, including the leases, contracts for deed, and several deeds, were executed prior to the 7th day of June, 1910, and the evidence shows that as a matter of fact Carsey was not 18 years of age until the 17th day of September, 1910. This was established by the family records and other evidence. The government census card introduced shows that on the 20th day of April, 1899, Carsey was seven years of age. We take it that there was no claim that this was her birthday, but simply the age given with the other members of the family enrolled at that date. Conceding the fact of her majority, as fixed by the census card, so far as it relates to transactions concerning her rights as an Indian to government land, and thereby including her legal capacity to convey the same, nevertheless the fact of her real age may

be taken into consideration by the court, so far as it relates to her capacity to transact business and protect her interests and rights in her property. Evidence was introduced tending to show the reasonable value of this land at the times of all these transactions to be from $2,500 to $4,000, and that the rental value for the same times was approximately $200 to $300 a year, which would show that the rental value of the land from the time it was allotted, until 1910, would be at least from $1,500 to $2,000. Giving Fox the benefit of his own testimony and all the testimony in his behalf on that subject, he did not pay to exceed $1,800 for this land, including all rentals for about ten years, and the $500 he paid at the time he procured the last deed. Fox in his answer admits that he paid the plaintiff only $500 on the 20th day of April, 1910, at the time he took the last deed, and further alleges that she, at that time, acknowledged the receipt from him of the sum of $1,683, which had theretofore been paid by him to her for her use and benefit; showing that the only real consideration, claimed by Fox to have been paid for the purchase of the land, was $500, and that the money theretofore paid as stated by him was as rentals or lease money.

There is some evidence tending to show that Carsey could read and write and had attended school for some three years, and that her father had some education, and had had some business experience, and also that a portion of the money, whether the lease money or the last $500 paid by Fox, had been used by her father in the way of purchasing a typewriter, a buggy, and some live stock for her benefit. As stated before, we are not able to ascertain from the record definitely whether this property was bought with the lease money, or with the $500 paid

her on the 20th day of April, 1910, and as we view the case it would be immaterial.

For the purpose of showing that plaintiff was competent, and fully understood all the transactions concerning this matter, and also that she received full consideration for the deed, counsel for Carlock calls the attention of the court to part of the testimony of Carsey. As we view the case the mental capacity of the plaintiff is not involved.

At the close of the evidence, the jury was instructed to return a verdict for the defendants,. which was accordingly done, and judgment rendered thereon, motion for new trial overruled, exceptions saved, and plaintiff brings error.

The evidence as stated is clearly within the issues raised by the pleadings. Counsel for plaintiff submit numerous assignments of error, but as we view the case it must be determined upon three propositions:    (1) Was the deed from Carsey Baken to F. M. Fox, for said land, made on the 20th day of April, 1910, a valid confirmation of the former contracts and deeds, and thereby a legal, binding conveyance of the premises to him?    (2) Was said Carlock a *bona fide* purchaser of said premises. through the conveyance from F. M. Fox?    (3) Was the deed made to J. H. Carlock, on the 7th day of June, 1910, a valid and binding conveyance of the land. from Carsey Baken to him?

Considering the first question, as to the confirmation of the contracts and deed, made prior to April 20, 1910, it is not claimed that plaintiff was legally competent prior to that date, nor that any of the transactions of that date,

or prior thereto, were approved by the county court or judge having jurisdiction of her estate.

Counsel for plaintiff contend that the first lease was void, because it was made by her father, who had no legal right or authority to make such a contract for her, and that the second lease was void, being in violation of section 1 of the Indian Appropriation Act of 1905, which provides that:

"No lease made by any administrator, executor, guardian, or curator, shall be valid or enforceable without the approval of the court having jurisdiction of the proceeding." (Fed. Stat. Ann. vol. 10, p. 142; 33 Stat. 1060.)

The above act of Congress was in force on the 12th day of April, 1906, at the time Fox procured his second lease, and first deed from Carsey, and therefore said instruments were both void, absolutely. Certainly no one will contend that a conveyance of real estate by a minor is valid when not obtained through court proceedings, or that it conveys any title or interest in the premises. But, as before stated, counsel contend that the purported settlement and conveyance of the land, on April 20, 1910, being the census card day on which plaintiff reached her majority, for government land transactions, was a ratification and confirmation of all prior transactions. We cannot agree with counsel in that contention. It is not only established by the proof, but admitted by defendant in his answer, that the only consideration paid to plaintiff on that day was $500, the balance of the consideration of $1,672.39 having been paid to her, if at all, in consideration of the prior unlawful transactions, in defendant's attempt to obtain title from her by entangling her into

unlawful if not fraudulent contracts and deeds, when she was a minor, as he well knew.

In an opinion just recently handed down by Mr. Justice Turner, being case No. 6386, *Carter v. Prairie Oil & Gas Co. et al.*, 58 Okla. —, 160 Pac. 319, we find a case peculiarly in point, the fourth paragraph of the syllabus of which is as follows:

"A citizen of the Creek Nation received $300 of the recited consideration of $3,600, and on July 2, 1907, prior to the removal of her restrictions, made, executed, and delivered a deed to a part of her allotment, void under section 19 of an act of Congress approved April 26, 1906 (chapter 1876, 34 Stat. 144). At the same time she took back from the grantees therein their two promissory notes, one for $1,700, payable August 9, 1907, and the other for $1,600, payable August 9, 1908, and agreed to meet them at the same place on August 9, 1907, which she did. There, on that day, her restrictions in the meantime being removed by operation of law, they took up both notes, paid her the note for $1,700, and took from her another deed for the same land, which recited the same consideration, and that $2,000 of it was that day cash in hand paid, and executed and delivered to her their note for $1,600 payable one year thereafter. *Held* that, although executed at different times, both deeds were evidence or part of one and the same transaction, and should be construed together; that the first deed being void, as in fraud of the statute, not only in that for the making of which an agreement was entered into before the removal of restrictions, but in that a part of the consideration of the first entered into the consideration for the second deed, the taint of illegality in that deed tainted the second; and that both are void. *Held* further that, being void, the subsequent purchaser of the land took no title."

The foregoing case is so obviously applicable that it seems useless to further discuss, at least that branch of

this case. The deed of April 20, 1910, being a part and parcel of the original transaction, is so tainted with illegality that it is absolutely void as in fraud of the statute. The second contention, that Carlock was an innocent or *bona fide* purchaser, cannot be sustained, for the reason, as above stated, that the original deed was absolutely void and conveyed no title to Fox. While not holding that Carlock could not be a *bona fide* purchaser under a quitclaim deed, the fact remains that he accepted such a deed from Fox and afterward, for palpable reasons, obtained a deed from Carsey, on the 7th day of June, 1910, without present or further consideration. It appears that this child of the forest was ready and willing at all times, when requested, to sign leases, contracts, or deeds to this land. In a case recently decided by Brett, C. *(Burton v. Compton,* 50 Okla. 365, 150 Pac. 1080), wherein a guardian of a minor sold real estate belonging to the minor to his wife, in violation of that section of the statute, and the well-known policy of the law, which provides that "no executor or administrator must either directly or indirectly purchase any property of the estate he represents, nor must he be interested in any sale," after holding that such sale was void, in passing upon the rights of the vendee of the wife, it was said:

"One who purchases from the vendee of a guardian's sale must take notice, at his peril, of the authority of the guardian to make the sale; and if sufficient facts appear, or are suggested by the record, in connection with other circumstances which are brought to his notice, to put a reasonably prudent man on inquiry, and he neglects to make such inquiry, he will be held to have actual knowledge of the channel through which his grantor claimed title, and that her grantor in the guardian's deed, under which she held, was in fact her husband."

The same rule is applicable here.   It will be noticed that Mr. Justice Turner, in *Carter v. Prairie Oil & Gas Co., supra,* also held that, the deed to the vendor of the subsequent purchaser being void, the attempted conveyance of such vendor was also void, and carried no title to his vendee.   Under these decisions, Carlock was not a *bona fide* purchaser of the land through the conveyance from Fox to him.

The third contention of defendant, that he received a valid deed and title from plaintiff on the 7th day of June, 1910, after she reached her legal majority, cannot be sustained for the reason that he paid her no consideration whatever for the land.   He cannot base his title or right to the land upon the former considerations, claimed to have been paid to her, for the reason that they were, and are, all tainted with such illegality as amounts to a statutory fraud.   For the foregoing reasons, the case should be reversed and remanded to the district court of Carter county, with directions to set aside the judgment and decree heretofore rendered therein, and enter decree in favor of the plaintiff, setting aside and canceling of record all leases, deeds, and other contracts involved herein, and quieting and settling title in plaintiff so far as the issues herein are involved.

By the Court:   It is so ordered.

---

## ON PETITION FOR REHEARING.

Opinion by ROBBERTS, C.   Counsel for defendants in error seems to have the idea, or at least contends, that the original opinion in this case was based upon the

theory that a conveyance made by a minor could not be ratified and made valid after the minor arrived at majority. Such was not, and is not, the holding in that opinion; on the other hand, it was based largely upon the ground of the fraud practiced by the defendants upon the plaintiff in procuring the deed from her, while she was a minor, commencing when she was less than 14 years of age, and diligently and persistently pursuing her until the day she reached her majority. In evidence of this statement, we quote from our former opinion as follows:

"Certainly no one will contend that a conveyance of real estate by a minor is valid when not obtained through court proceedings, or that it conveys any title or interest in the premises. But, as before stated, counsel contend that the purported settlement and conveyance of the land, on April 20, 1910, being the census card day on which plaintiff reached her majority, for government land transactions, was a ratification and confirmation of all prior transactions. We cannot agree with counsel in that contention. It is not only established by the proof, but admitted by defendant in his answer, that the only consideration paid to plaintiff on that day was $500, the balance of the consideration of $1,672.39 having been paid to her, if at all, in consideration of the prior unlawful transactions, in defendant's attempt to obtain title from her by entangling her into unlawful if not fraudulent contracts and deeds, when she was a minor, as he well knew.  *  *  *

"The deed of April 20, 1910, being a part and parcel of the original transactions, is so tainted with illegality that it is absolutely void as in fraud of the statute. The second contention, that Carlock was an innocent or *bona fide* purchaser, cannot be sustained, for the reason, as above stated, that the original deed was absolutely void and conveyed no title to Fox. While not holding that Carlock could not be a *bona fide* purchaser under a quit-

claim deed, the fact remains that he accepted such a deed from Fox, and afterward, for palpable reasons, obtained the deed from Carsey, on the 7th day of June, 1910, without present or further consideration. It appears that this child of the forest was ready and willing at all times, when requested, to sign leases, contracts, or deeds to this land. In a case recently decided by Brett, C. (*Burton v. Compton,* 50 Okla. 365, 150 Pac. 1080), wherein a guardian of a minor sold real estate belonging to the minor to his wife, in violation of that section of the statute, and the well-known policy of the law, which provides that 'no executor or administrator must either directly or indirectly purchase any property of the estate he represents, nor must he be interested in any sale,' after holding that such sale was void, in passing upon the rights of the vendee of the wife, it was said: 'One who purchases from the vendee of a guardian's sale must take notice, at his peril, of the authority of the guardian to make the sale; and if sufficient facts appear, or are suggested by the record, in connection with other circumstances which are brought to his notice, to put a reasonably prudent man on inquiry, and he neglects to make such inquiry, he will be held to have actual knowledge of the channel through which his grantor claimed title, and that her grantor in the guardian's deed, under which she held, was in fact her husband.' The same rule is applicable here. It will be noticed that Mr. Justice Turner, in *Carter v. Prairie Oil & Gas Co., supra,* also held that, the deed to the vendor of the subsequent purchaser being void, the attempted conveyance of such vendor was also void, and carried no title to his vendee. Under these decisions, Carlock was not a *bona fide* purchaser of the land through the conveyance from Fox to him.

"The third contention of defendant, that he received a valid deed and title from plaintiff on the 7th day of June, 1910, after she reached her legal majority, cannot be sustained for the reason that he paid her no consideration whatever for the land. He cannot base his title

or right to the land upon the former considerations, claimed to have been paid to her, for the reason that they were, and are, all tainted with such illegality as amounts to a statutory fraud."

The apparent attempt of defendants to obtain title from this minor, beginning when she was a mere child, is so evident that we are forced to the conclusion that the entire transaction was so tainted with fraud that the conveyance should be canceled, the title quieted in plaintiff, and the application for rehearing denied.

By the Court: It is so ordered.