**PERKINS et al. v. MIDDLETON et al.**

No. 7932—Opinion Filed July 24, 1917.

(166 Pac. 1104.)

**1. Guardian and Ward—Sale of Land—Power of Guardian—Exchange of Land.**

The authority of a guardian to sell and convey the real estate of his ward rests entirely upon the statutes. Such real estate cannot be sold or conveyed by the guardian except for the purposes and upon the terms and conditions prescribed by the statutes. A sale of the ward's real estate can only be made for money, and a conveyance thereof in exchange for other lands is unauthorized.

**2. Same—Fraud Upon Estate.**

Where the face of the record in county court purports to show a sale of the real estate of a ward by his guardian and reinvestment of the proceeds of such sale in other real estate, such sale being confirmed by the court and a deed executed and delivered by the guardian to the purchaser and such guardian directed and authorized by the court to reinvest the proceeds of such sale in such other real estate and a deed to such other real estate executed and delivered conveying such real estate to the ward, such record being made under an agreement between the guardian and the owner of such other real estate that the purchase price of the ward's real estate, purported to be sold, is not to be paid in full, but that said real estate of the ward is to be exchanged for the other real estate, purported to be purchased under the reinvestment order, the proceedings, though regular upon the face of the record, constitute a fraud upon the estate of the ward.

**3. Same—Notice to Purchaser—Action by Ward to Rescind Exchange.**

Because of such fraud said proceedings are voidable and the ward is entitled, in an action against the persons so acquiring his lands, with knowledge or notice of such fraud, to recover the proceeds of the ward's real estate when the same has been conveyed to an innocent purchaser.

**4. Same—Measure of Damages.**

In an action by a ward to avoid the purchase of real estate for the ward by his guardian, because of such fraud, and to recover the value of the ward's real estate from the person to whom it was exchanged, the measure of the damages of the ward is the value of his real estate, at the time of the exchange, less any moneys received by the guardian of the ward in such exchange as boot between the properties, with legal interest from said time, and less all rents and profits received by the ward for the real estate exchanged above the necessary repairs and expenses of said real estate, and remaining in the hands of the ward at the time he reached majority or at the time he seeks to avoid such exchange during minority.

**5. Infants—Contracts—Ratification — Exchange of Land by Guardian.**

Such an exchange of the real estate of an infant ward for other real estate, being voidable, may be ratified by said infant upon attaining majority, and such ratification need not be express, but be implied from acts and conduct of the ward with reference to the real estate received by him in exchange.

**6. Same—Action to Avoid Exchange—Instruction.**

The question of ratification having been raised by the evidence, an instruction, in an action to avoid such purchase or exchange, defining ratification as the approval of the transaction and an adoption of it as though made in the first instance by the infant and the intention on the part of such infant to retain the fruits of such transaction, is erroneous, in that it omits to instruct the jury as to implied ratification from acts and conduct.

**7. Same.**

When the evidence tends to show that a ward after arriving at majority, with full knowledge of all the facts relating to the exchange of his real estate for other real estate, mortgages the real estate received in exchange by him, to secure the payment of a promissory note, it is error to refuse an instruction, requested in an action to avoid such exchange of real estate, which advises the jury that if they find that the ward after attaining majority, with knowledge of all the facts, mortgaged the real estate received by the ward, they should find that said ward has ratified the transaction.

(Syllabus by Rummons, C.)

Error from District Court, Bryan County: Jesse M. Hatchett, Judge.

Action by Eva Middleton and May Middleton, by her next friend, against T. J. Perkins and another. There was a judgment for plaintiffs, and defendants bring error. Reversed and remanded.

Hatchett & Ferguson, for plaintiffs in error.

R. E. Stephenson, for defendants in error.

Opinion by RUMMONS, C. The parties will be referred to herein as they appeared in the court below. Eva Middleton and May Middleton, the plaintiffs, are Choctaw Indians of less than one-half blood, and each received an allotment situated in Jefferson county, Okla. Charles Middleton, the father of the plaintiffs, was duly appointed their guardian by the county court of Bryan county, and qualified and acted as such guardian. A petition was filed by him as such guardian in the county court of Bryan county for an order of sale of the allotments of plaintiffs. Such order was duly signed, and the allotments were sold thereunder. Eva Middleton's allotment was bid in by W. A. McLagon for $1,450, and May Middleton's allotment was bid in by W. W. Peniston for $1,600. The guardian made return of the sales to the county court, and the same were, on February 22, 1910, confirmed by said court, and the guardian was ordered to execute guardian's deeds conveying said allotments to the respective purchasers. McLagon and Peniston made default in the payments of the purchase price of the respective allotments, and refused to pay for the same. The guardian by his attorneys then began negotiations with the defendants for the purpose of procuring the defendants to take these allotments at the prices bid for them by McLagon and Peniston. The negotiations resulted in an agreement between such guardian and the defendants by which it was agreed that the defendants were to take the allotments sold to McLagon and Peniston at the price bid for them, and that the guardian was to take a conveyance from the defendants of two lots in the town of Bokchito, Bryan county, upon which a hotel building was erected, for $2,200 the purchase price of said allotments. Pursuant to this agreement the guardian made application to the county court for an order authorizing him to invest $2,200 of the funds of his wards arising from the sale of their allotments in the hotel property at Bokchito. On March 11, 1910, the county court of Bryan county approved the investment of the sum of $2,200 in said hotel property and or-dered the guardian to pay said sum for said property and take a deed therefor to his wards. On March 31, 1910, said guardian executed his guardian's deed, conveying the respective allotments to McLagon and Peniston. McLagon and Peniston quitclaimed said allotments to the defendants, or to a grantee designated by defendants. Defendants conveyed, or caused to be conveyed, the hotel property in Bokchito to the plaintiffs. There was evidence tending to show that the balance of the purchase price of said allotments, the sum of $850, was paid, part to the guardian and in the payment of costs and attorney's fees for conducting said sale. On July 21, 1914, Eva Middleton, who arrived at her majority on September 25, 1913, for herself and as next friend for May Middleton, who was still a minor, began this action in the district court of Bryan county against the defendants. The petition of plaintiffs alleged the facts above set out, and alleged that such facts constituted a fraud upon the county court of Bryan county and upon the plaintiffs. Plaintiffs alleged that the transaction between their guardian and the defendants was unauthorized by law; alleged that the reasonable value of their allotments was $4,000, and that the value of the property in Bokchito was $1,000; that no cash consideration was ever paid for said allotments; that the guardian of plaintiffs had expended the sum of $200 for repairs on said Bokchito property and that the title to the allotments of the plaintiffs had passed into the hands of innocent purchasers. Plaintiffs then prayed judgment against the defendants for the sum of $2,200, being the purported consideration of said lots, for the sum of $200 for the repairs made on the building upon said lots, together with such other sums as would compensate plaintiffs for the general and special damages suffered by plaintiffs, and prayed that the court divest plaintiffs of the title to the lots in Bokchito and vest the same in the grantors, set forth in the deed to plaintiffs, of said lots. Defendants answered, denying any fraud on the part of the guardian or the defendants, and pleading the action of the county court of Bryan county, ordering the investment of $2,200 in the Bokchito property. Defendants further pleaded that the guardian of plaintiffs charged himself as such guardian with the purchase price of the allotments of plaintiffs. Plaintiffs further pleaded the statutes of limitation. Plaintiffs replied, putting in issue the allegations of the answer. The cause was tried to a jury, resulting in a verdict for plaintiffs in the sum of $2,305. Defendants in due time moved for a new trial, and, their motion being overruled, excepted, and bring this

proceeding in error to reverse the judgment of the trial court.

The defendants' first assignment of error complains of the refusal of the trial court to direct a verdict in favor of the defendants. Under this assignment it is contended by counsel for defendants that the testimony as to the real nature of the transaction between the guardian of plaintiffs and the defendants was incompetent, and that, as the proceedings in the county court of Bryan county, respecting the sale of the allotments of plaintiffs and the reinvestment of $2,200 of the proceeds of such sale in the Bokchito property, appeared regular upon the face of the record, the same could not be impeached in a collateral proceeding such as this. It is further urged in support of this assignment, that there was evidence tending to show that the county court of Bryan county, when it made the order for the reinvestment of the funds of plaintiffs in the Bokchito property, was fully advised as to all the facts surrounding the transaction, and that the entire proceeding was regular and authorized by law.

The authority of a guardian to sell his wards' real estate rests entirely upon the statutes, and such real estate cannot be sold or conveyed by the guardian except for the purposes and upon the terms and conditions prescribed by the statutes. 12 R. C. L. 1126—1137; Baken v. Fox, 57 Okla. 544, 157 Pac. 340, 342. Section 6567, Rev. Laws 1910, is as follows:

"All sales of real estate of wards must be for cash, or for part cash and part deferred payments, not to exceed three years, bearing date from date of sale, as, in the discretion of the county judge is most beneficial to the ward. Guardians making sales must demand and receive from the purchaser a bond and mortgage on the real estate sold, with such additional security as the judge deems necessary and sufficient to secure the faithful payment of the deferred payments and the interest thereon."

The purposes for which real estate of the ward may be sold are set out in sect'ons 6553, 6554, Rev. Laws 1910, as follows:

"6553. When the income of an estate under guardianship is not sufficient to maintain the ward and his family, or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose, upon obtaining an order therefor.

"6554. When it appears to the satisfaction of the court, upon the petition of the guardian, that for the benefit of his ward his real or personal estate, or some part thereof, should be sold, and the proceeds thereof put out at interest, or invested in some productive stock, or in the improvement or security of any other real estate of the ward, his guardian may sell the same for such purpose, upon obtaining an order therefor."

Sections 6555, 6556, and 6569, Rev. Laws 1910, provide for the application of the proceeds of the sale of the ward's property and their investment as follows:

"6555. If the property is sold for the purposes mentioned in the two preceeding (sections), the guardian must apply the proceeds of the sale to such purposes, as far as necessary, and put out the residue, if any, on interest, or invest it in the best manner in his power, until the capital is wanted for the maintenance of the ward and his family, or the education of his childern, or for the education of the ward when a minor, in which case the capital may be used for that purpose, as far as may be necessary, in like manner as if it had been personal estate of the ward.

"6556. If the property be sold for the purpose of putting out or investing the proceeds, the guardian must make the investment according to his best judgment, or in pursuance of any order that may be made by the county court."

"6569. The county court, on the application of a guardian or any other person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

These last-quoted sections are relied upon by defendants as authorizing the transaction which took place in the instant case. We think, however, that they afford no authority for the exchange by the guardian, with or without the consent of the county court, of the property of the ward for other property, and that, construing all of our statutes governing the administration of estates of wards by guardians, no authority can be found for the sale of the ward's property for anything but money. Section 6567, first quoted above, seems to be mandatory, and requires all sales to be made for cash unless made upon terms for deferred payments. Our statutes relative to the investment of funds of the ward, whether arising from sales of the ward's property or otherwise, contemplate that the money to be invested shall be in the hands of the guardian at the time such investment is made. It seems to us that there is ample reason why

this should be the law. If the property of the ward be exposed for sale for cash, it is open to the bid of any one desiring to bid. If it be offered for exchange of other property the field for bidders is necessarily reduced and limited by the condition of the property offered to be sold and by the condition of the property sought in exchange. So it is as to funds for investment. If the guardian has money of the ward in his hands for investment, the entire field of investment, as limited by the statutes, is open to him. If he seeks investment of his ward's funds by exchange of one property for another, the field, as we have said, is circumscribed and limited. We think then that the transaction which occurred in the instant case was clearly without any authority of law, and that it was an attempt to do by indirection that which could not lawfully be done directly, and therefore amounted to a constructive fraud upon the court and upon the wards. Bridges v. Rea, 64 Okla. 115, 166 Pac. 416.

As to the first contention of the defendants, that the records of the county court cannot be impeached in this proceeding, and that the evidence offered and introduced to impeach such record was incompetent, we think no good purpose would be served by a review of the authorities relied upon by defendants, for we think the status of sales of the lands of wards, under circumstances similar to these in the instant case, is settled by two recent cases determined by this court, Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Langley v. Ford, 68 Oklahoma, 171 Pac. 471. In those cases it is determined that a sale by a guardian of a ward's real estate, by which is done indirectly that which is forbidden by law to be done directly, is not void, but is voidable in an action brought to set aside such sale against the purchaser or the guardian, or any one claiming under them with knowledge of the circumstances of the sale and not a bona fide purchaser. In both of these cases, Mr. Justice Hardy, who delivered the opinion of the court, says:

"When a guardian sells the lands of his ward on a secret understanding that the purchaser will not pay for same and the sale is confirmed by the court and deed is executed and delivered to the purchaser, such facts constitute a fraud upon the estate of the ward, and the same may be set aside in an action by the ward against the purchaser or any other person who acquires rights in said lands with knowledge or notice of such secret fraud."

In the cases relied upon by the defendant upon the proposition that a collateral attack cannot be made upon a sale regular upon the face of the record, the fraud relied upon to support such attack was inherent in the record. In the instant case the fraud which constructively arose by reason of the transaction was aliunde the record, and did not inhere in the proceedings shown by the record, and the rule is that fraud aliunde the record may be shown for the purpose of impeaching such record.

The state of the case then was that the plaintiffs had been divested of the title to their allotments by a transaction which amounted to a fraud upon them. The title to these allotments had passed to innocent holders, and, the sale not being absolutely void, the allotments were beyond their reach. The proceeds of these allotments, however, were in the hands of the defendants, who had knowledge of and had participated in the fraud perpetrated upon them. In the case of Allison v. Crummey, supra, Mr. Justice Hardy quotes with approval from Wallace v. Brown, 41 Ind. 436, where it said:

"We think under the facts shown in this case the sale cannot be regarded otherwise than as fraudulent and void. One who knowingly receives from a trustee the trust money or property in satisfaction of the individual debt of the trustee to him must be regarded as participating in the fraudulent diversion of the property, and liable to the beneficiary in the trust. Austin v. Wilson's Administrators, 21 Ind. 252, and cases there cited." Thomasson's Administrators v. Brown, 43 Ind. 203.

It is not contended by the defendants herein that they had no knowledge of the circumstances, surrounding this transaction, relied upon by the plaintiffs for recovery, and that they took a conveyance from the guardian of the property held by him in trust for his ward with a full knowledge of the facts. They took it, then, incumbered with the trust, and the trust will follow and be impressed upon the proceeds of the ward's property in their hands. The plaintiffs, therefore, were entitled to require the defendants to account to them for their allotments, and we think the trial court committed no error in refusing to direct a verdict for the defendants.

Defendants' second assignment of error complains that the court refused to submit to the jury the question of whether or not the transaction had between the defendants and the guardian was fraudulent. What we have said as to the first assignment of error disposes of this assignment. We have held that the transaction between defendants and the guardian upon the undisputed facts amounted to a fraud in law, and it therefore ceased to be a question of fact to be determined by the jury, and the court

committed no error in not submitting that issue to the jury.

Defendants next complain of error of the court in submitting to the jury the measure of damages the plaintiffs were entitled to recover. The court gave the following instruction upon the measure of damages, which was excepted to by the defendants:

"The evidence shows that the guardian of the plaintiffs conducted a sale of plaintiff's allotments through the county court; that the same was bid in by one Peniston and McLagan who refused to accept deeds to the allotments and pay for the same according to their bids and that thereafter these defendants with other parties negotiated with said guardian and agreed to take said lands and pay for same by exchanging the Bokchito hotel property, and in addition thereto some cash. And thereupon the transaction was consummated in that way.

"You are instructed that such a transaction was unauthorized by law, and was not binding upon these plaintiffs, as between them and the defendants; and unless you find that Eva Middleton had ratified the transaction since attaining her majority, the plaintiffs are entitled to recover from the defendants the cash value of the allotments at the time they were sold, less such sum of money as the defendants paid to the guardian of the plaintiffs. In ascertaining the amount you should allow the plaintiffs 6 per cent. on the sum due from the date of the transaction, and charge them with the rents collected on the hotel property less the sum paid for repairs."

Plaintiffs in their petition alleged the facts surrounding the transaction which resulted in the conveyance of their allotments to the defendants. It is true that in the prayer of the petition they seek to recover the sum of money at which the Bokchito property was exchanged for their allotments, together with the money expended by their guardian in improving and repairing said property, but they pray generally for compensation for such damages as they have sustained. We think the measure of their damages was the value of their allotments at the time they were conveyed from them to the defendants. It is, however, urged by the defendants that the court erred in directing the jury to deduct from the value of the allotments the rents collected on the hotel property, instead of directing the jury to deduct the reasonable rental value of such property during the time it was held by plaintiffs.

The transfer of the allotments in exchange for the hotel property was, as we have seen, a voidable transaction, and the plaintiffs might, at any time, within a reasonable period after attaining their majority, elect to avoid the transaction and recover their property or its value from any one having knowledge of the infirmities of the transaction. In order to so avoid the transaction, however, it was necessary for them to offer to return to the defendants what they had received from the conveyance of their allotments, or so much thereof as remained in their hands at the time they sought to avoid the transaction or at the time they attained their majority. Tirey v. Darneal, 37 Okla. 606, 133 Pac. 614; Coody v. Coody 39 Okla. 719, 136 Pac. 754, L. R. A. 1915E, 465; Englebert v. Pritchett (Neb.) 26 L. R. A. 177, note. The plaintiffs then were only required to offer to return to the defendants the property they had received from the defendants, together with the rents and profits thereof that remained in their hands, either upon their becoming of age or upon their electing to avoid the transaction before their becoming of age. The instruction complained of, therefore, was fully as favorable to the defendants as they were entitled.

It is next complained by the defendants that the court erred in its instruction to the jury upon the question of the ratification of the transaction by the plaintiff Eva Middleton. Upon this question the court instructed the jury as follows:

"Eva Middleton had the power and the right to ratify and confirm the transaction whereby her allotment of land was sold in exchange for an interest in the hotel property and the additional cash which her guardian received, after she attained her majority. A ratification or confirmation would mean the approval of the transaction and an adoption of it as though she had made it in the first instance herself, and the intention on her part to retain the fruits of it. Therefore, if you find from the evidence in this case that after Eva Midlleton became 18 years of age she had full knowledge of this transaction and she thereupon confirmed the same, she would then be bound by the terms of the transaction, and could not sue to rescind or to recover a money judgment, and your verdict should be for the defendants as to her. In ascertaining whether or not she did so confirm you would take into consideration all the facts and circumstances which have been introduced in evidence."

The defendants requested instructions upon the question of ratification, which were refused by the court, defendants excepting, as follows:

"The jury are instructed that if you find that the plaintiff, Eva Middleton, after

reaching 18 years of age, with knowledge that her allotment had been disposed of and that in lieu thereof she had received one-half interest in certain property in Bokchito, Okla. ratified said transaction, then you must find for the defendants as to her. By ratification the court means any act on the part of said plaintiff after reaching the age of 18 years which shows an intention to confirm said transaction. If you find that the plaintiff, Eva Middleton, after reaching 18 years, and with knowledge of the transaction in question, mortgaged the property in question to any one, then you should find that the plaintiff had ratified the transaction and you should find against her."

"The jury are instructed that if you find that the plaintiff Eva Middleton, after becoming 18 years of age, with full knowledge of the transaction in question, recognized the said transaction by exercising acts of ownership over said property, or by acts and conduct which clearly evidence an intention to confirm same, then you are instructed said plaintiff had ratified said transaction, and you should find against her in favor of defendants,"

It is disclosed by the evidence of the plaintiff Eva Middleton that at the time she became of age in October, 1913, she had full knowledge of all the facts surrounding this transaction. The testimony further shows that after she became of age she and her father, as guardian of her sister, May Middleton, had the property improved, and made a contract with reference to the leasing of the same, and collected the rents and profits of the same. The record further shows that on July 2, 1914, before the commencement of this action, she executed a mortgage for the sum of $400 to R. E. Stephenson upon her interest in the Bokchito hotel property. R. E. Stephenson is the attorney for plaintiffs in this action. The record contains the following statement by him:

"In order that that may be clear: * * * of course a lawyer is naturally concerned in securing his fee if he prevails; that's a mortgage given for my fee, and I desire to say to the court that I hold a note and mortgage in my hands given to secure my fee, and the court may cancel it or do whatever the court desires in determining this matter, or I will deliver the note and mortgage to the court in order that it may know that no undue advantage is taken of these defendants. I will say frankly in the situation in this case, if I don't prevail, I wouldn't hold the mortgage."

This statement was not made under oath. Mr. Stephenson is not a party to this action, and the statement contained in the record has no bearing upon the question here involved. It is contended by the defendants that the giving of this mortgage by the plaintiff Eva Middleton, with full knowledge of all the facts in the case, was such an act with reference to the property, the purchase of which she was seeking to avoid, as to amount to a ratification in law. It is further contended by defendants that, even if the question of ratification by this plaintiff was still properly for the jury, the instruction complained of was erroneous, in that it did not permit the jury to infer a ratification by the plaintiff from her acts with reference to the Bokchito property, but required them to find that she had approved and adopted the transaction as though she had made it in the first instance herself. We think this criticism of the instruction given by the court is well taken. This transaction, being only voidable, could be ratified by the plaintiff Eva Middleton upon her reaching her majority, and it was not necessary, in order to constitute a ratification, that she should approve the transaction or adopt it as though she had entered into it in the first place herself. One may ratify a void transaction by acting so as to create a clear implication that he intends to ratify the contract. A ratification will be imputed to one who, with full knowledge of the facts, goes beyond the passive retention of the property within his hands and takes the benefits of the contract by selling, mortgaging, or conveying to anyone the propery which he acquired, though he may not have intended to ratify. Cash v. Thomas, 62 Okla. 21, 161 Pac. 220, 14 R. C. L. 246, 248, 250; American Freehold Land Mtg. Co. v. Dykes, 111 Ala. 178, 18 South. 292, 56 Am. St. Rep. 38; Lawson v. Lovejoy, 8 Greenl. (Me.) 405, 23 Am. Dec. 526; Chandler v. Simmons, 97 Mass. 508, 93 Am. Dec. 117; Tobey v. Wood, 123 Mass. 88, 25 Am. Rep. 27; Hoit v. Underhill, 9 N. H. 436, 32 Am. Dec. 380; Lynde v. Budd, 2 Paige (N. Y.) 191, 21 Am. Dec. 84; Walsh v. Powers, 43 N. Y. 23, 3 Am. Rep. 654. In the instant case the jury were not advised by the court that they might find that Eva Middleton had ratified the transaction, if they found that with full knowledge of the transaction she had exercised acts of ownership over the property or mortgaged it or by acts and conduct evidenced an intention to confirm the same, We think the trial court erred in defining ratification to the jury, in that the language used necessarily limited the ratification to an express approval of the transaction, and excluded from the jury

the consideration of an implied ratification by acts and conduct of the plaintiff Eva Middleton. It is urged on behalf of the plaintiffs that this mortgage, which is relied upon by the defendants as a ratification by Eva Middleton, was but the first step taken by said Eva Middleton to avoid the exchange of this hotel property for her allotment because it appears from the statement of counsel for plaintiffs that the mortgage was given to secure the fee of the attorney for plaintiffs for his services in avoiding the transaction. While this is no part of the record, it is no doubt true, but we must confess that it was a most strange step to be taken as the beginning of the avoidance of a fraudulent transaction. To say that the execution of a mortgage upon a piece of property, which the plaintiff says was fraudulently imposed upon her, and which she did not wish to retain, and in which she legally had no interest, while at the same time by a mortgage she declares herself the owner of the property, is a step in the avoidance of the transaction and the first move toward a rescission of the conveyance of the property to her requires a most vivid imagination.

We think the court should have told the jury that, if they found that the plaintiff Eva Middleton, with full knowledge of all the facts surrounding the transaction of which she complained, had executed a mortgage upon the real estate, the conveyance of which to her she sought to rescind, she thereby ratified the conveyance to her of said property, and she could not recover.

This error as to Eva Middleton would not necessarily work a reversal of the judgment in favor of the plaintiff May Middleton, but the record discloses that the allotments, for which the plaintiffs sought recovery, were not of equal value. The verdict of the jury was a general one in favor of both the plaintiffs and against both the defendants. The action was brought by both the plaintiffs jointly without objection, and as the facts involved in each case were the same, they could properly be jointly tried, but the value of the allotments not being equal, the amount of the recovery, to which each of the plaintiffs might be entitled was not the same, and the jury should have been instructed as to the measure of damages of each of the plaintiffs. As it is, we are unable to say what the jury may have found the value of the allotment of May Middleton to be.

nor what the amount of her recovery should be.

The judgment of the trial court should therefore be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.