BYNUM et al. v. MOORE.

No. 14186—Opinion Filed Dec. 4, 1923.

Rehearing Denied Feb. 26, 1924.

(Syllabus.)

1. **Election of Remedies—Election by Guardian—Conclusiveness.**

A minor will not be bound by an election of remedies made by her guardian, unless a court of competent jurisdiction has, as a result of judicial examination, made an election on the infant's behalf.

2. **Appeal and Error — Review — Effect of General Finding.**

A general finding of the trial court must be considered as a finding of every material fact which is necessary to support the general finding, and, in an equity case, this finding will not be disturbed on appeal unless clearly against the weight of the evidence.

3. **Infants—Arrival at Majority—Females.**

Under section 4972, Comp. Stat. 1921, a female arrives at her majority on the first moment of the 18th anniversary of her birth, and not on the first moment of the day before the anniversary of her birth.

4. **Vendor and Purchaser—Notice—Records Exciting Inquiry.**

A purchaser of lands, who buys in reliance upon the record title, is chargeable with all the notice brought to him by the records, and, if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought him.

Error from District Court, McClain County; John L. Coffman, Judge.

Action by Carrie Imogene Moore against Ernest T. Bynum and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Keaton, Wells & Johnston, I. R. McQueen, Williams & Luttrell, C. G. Moore, J. B. Dudley, and Blanton & Osborn, for plaintiffs in error.

Rainey & Flynn, W. H. Woods, and S. W. Turk, for defendant in error.

COCHRAN, J. This action was commenced by defendant in error for the recovery of a certain tract of land situated in McClain county, Okla., allotted to her as a member of the Chickasaw Tribe of Indians. The petition alleged, in substance, that the lands were illegally sold in 1910 by her guardian, W. C. Randolph, through the county court of Garvin county, Okla.; and that Ernest T. Bynum was the purchaser at the guardian sale for a consideration of $5,080.05, which sum, it was alleged, was never paid by purchaser to the plaintiff's guardian; that at the time of his purchase of the plaintiff's land, E. T. Bynum purchased of E. M. Moore, father of the plaintiff, adjoining lands, being the allotments of E. M. Moore and his wife, Jessie E. Moore, executing his note for $14,000, representing the purchase price of the three tracts of land, to E. M. Moore and securing the note by mortgage covering the three tracts; that on February 8, 1912, suit was filed by W. C. Randolph, as guardian of Carrie Imogene Moore, in the district court of McClain county, Okla., and judgment was thereafter rendered in said cause, under which judgment the three tracts of land comprising the allotments of Carrie Imogene Moore, E. M. Moore, and Jessie E. Moore, were found to be subject to mortgages for $5,800 to Close Brothers & Company, and $1,000 in favor of the Travelers' Insurance Company, and $8,112 in favor of the Pauls

Valley National Bank and the First Bank of Maysville, and $1,339 in favor of Jessie E. Moore. It was further alleged that the judgment rendered in her favor for the purchase price of her land was never enforced, but that same was released and discharged by L. C. Andrews, who procured a deed to plaintiff's land from Ernest T. Bynum, and L. C. Andrews executed a note for the purchase price of plaintiff's lands in the sum of $5,500 and secured the same by a real estate mortgage; that Andrews made certain payments to plaintiff's guardian prior to her majority, and since plaintiff became of age said Andrews paid plaintiff on the indebtedness the sum of $2,000. The various defendants filed their answers, in which it was admitted that the land was a part of the allotment of the plaintiff and that W. C. Randolph, as guardian of the plaintiff, made a guardian's sale of said land, and executed and delivered to Bynum a guardian's deed for a consideration of $5,080.05 to plaintiff's land, and that said sum was paid to E. M. Moore, who was authorized by Randolph in writing to receive said sum but said sum was never in fact received by Randolph as guardian, but was accepted and dissipated by E. M. Moore; that after the execution and delivery of the deed to Bynum, the said Bynum and wife executed and delivered to E. M. Moore a note for $14,700, secured by a mortgage on the allotments of the plaintiff and E. M. Moore and Jessie E. Moore; that this note represented the balance of the purchase price agreed to be paid by Bynum for the three tracts of land; that thereafter, and before the maturity of said note, E. M. Moore pledged the $14,700 note to the Pauls Valley National Bank and the First Bank of Maysville, Okla., to secure indebtedness owing by Moore to the banks, and executed a written assignment of the note and mortgage to the banks; that the banks were holders of his note in due course without notice for value; that about June 9, 1911, the banks advertised this note for sale, and thereupon W. C. Randolph, as guardian of Carrie Imogene Moore, employed L. C. Andrews as attorney to institute action in the district court of McClain county for the purpose of preventing the sale by said banks of this note, and for the purpose of establishing an interest in said note and mortgage in favor of Carrie Imogene Moore for the purchase price of her land; that thereafter the action was instituted, and upon trial judgment was rendered for the banks adjudging them to have a prior lien upon the premises, including the plaintiff's allotment, and subject only to prior mortgages in favor of Close Brothers & Company

in the sum of $5,800 and Travelers' Insurance Company in the sum of $1,000.

It is further alleged that at the time this suit was instituted on behalf of Carrie Imogene Moore, the lands were incumbered for more than the actual worth, and had plaintiff sought recovery of the land rather than a lien of the purchase price, recovery would not have availed her anything, as the lands were subject to liens aggregating over $15,000; that Andrews, after procuring judgment in favor of plaintiff, endeavored in good faith to make a sale of the property for an amount equal to the liens against said property, including plaintiff's lien, and was unable to do so, and in order to prevent a sacrifice of the lands and a complete loss thereof to plaintiff, said Andrews agreed to take over said lands and protect the said Carrie Imogene Moore on the price thereof; in pursuance of said arrangement, Ernest T. Bynum and wife deeded the lands to Andrews and Andrews made settlement with the holders of the prior liens aggregating over $15,000, and executed to the guardian of plaintiff his note for $5,400, securing same by a mortgage on said premises and other lands, which note was due in five years from date; the said Andrews paid the interest on said indebtedness annually to plaintiff's guardian, and after her majority paid the interest and a portion of the principal to the plaintiff, reducing the amount to about $2,000.

Defendants allege, further, that the plaintiff was estopped from maintaining this action because at the time of instituting the action in the district court of McClain county, Okla., she had two distinct and inconsistent remedies available to her and she elected to recover for the purchase price of the land instead of recovery of the lands, and by reason of such election she is estopped from recovering the land in this action; that plaintiff, after arriving at full age, with knowledge of all the facts, collected from Andrews the sum of $2,166 on said indebtedness and thereby ratified said sale; that the plaintiff's cause of action was barred by the statute of limitation in that the guardian's deed was filed for record more than five years prior to the date of the filing of this action, the action not being filed by the plaintiff for more than two years after she arrived at her majority. It is further alleged that the defendants were innocent purchasers for value, without notice of any defects in the title. Upon a trial of the case, the court found that the plaintiff was the owner of the lands in controversy and canceled the various deeds and mortgages thereon, and found that the rents received by the defendants

were equal to and offset the amount of money received by plaintiff and her guardian in her behalf. From the judgment, the defendants have appealed.

It is first contended by the defendants. that the plaintiff, through her guardian, by instituting and prosecuting to final judgment the action in the district court of Mc-Clain county, Okla., and accepting the benefits thereof, elected to and did ratify and confirm the same, and, having so elected, she is estopped from instituting and prosecuting this action for the recovery of this land. In Freeland v. Dolen, 84 Okla. 286, 203 Pac. 182, this court states the requisites of election to be:

"(1) There must be in fact two or more co-existing remedies between which the party has the right to elect; (2) the remedies thus opened to him must be inconsistent, and (3) he must, by actually bringing his action, or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. Any unambiguous act consistent with one and inconsistent with others will be deemed conclusive evidence of an election."

This doctrine is also announced in the following cases: First Trust & Savings Bank of Chicago v. Bloodworth, 70 Oklahoma, 174 Pac. 545; Herbert v. Wagg, 27 Okla 674, 117 Pac. 209; Ireland v. Waymire (Kan.) 191 Pac. 304. Accepting the above as the correct statement of law as to the election of remedies in this jurisdiction, is this doctrine of election of remedies applicable to minors? In Vose v. Penny, 78 Okla. 238, 190 Pac. 97, this court had before it the question of election of remedies by a guardian of a minor, and held:

"Where a guardian elects to void the deed given at a guardianship sale, and in his action to ' void said deed seeks to secure personal judgment against the grantee for the amount of a mortgage placed upon the premises by grantee, and recognizes a proceeding brought against the grantee to foreclose the mortgage and fails to intervene therein, but instead, pursues his remedy against the grantee to judgment, he is precluded from' thereafter raising the question of the validity of the mortgage foreclosed."

In the above case both suits were prosecuted by the same guardian, and same was true in Gentry v. Bearss (Neb.) 130 N. W. 428, cited in this opinion, but in the case at bar the minor brought the suit after reaching majority.

In Gentry v. Bearss, supra, an order of the county court was procured authorizing the first suit to be brought. The rule announced in Pomeroy on Equity Jurisprudence, vol. 1, p. 509, we think is the correct rule applicable to a case like the one now under consideration, and it is as follows:

"It is very clear that an infant cannot elect. In cases where an infant, if he had been an adult, would be bound to elect, the court has sometimes deferred the question of election, where this could be done without prejudice to the rights of the other parties, until the infant came of age. The ordinary rule is for the court to direct an inquiry to be made whether it is to the infant's advantage to elect or not, and what election ought to be made. In other words, the court, as a result of a judicial examination, itself makes the election on the infant's behalf."

In the instant case, the action instituted by W. C. Randolph, as guardian, for the foreclosure of a mortgage for the purpose of collecting the purchase price on the land sold by him as guardian, and where he made a fraudulent return showing that the sale had been made for cash, cannot be considered as an election for the minor. The guardian's interest and the minor's interest were antagonistic. It is only natural to suppose that under the circumstances involved in this transaction, the guardian would have been more likely to look after his interest and that of the fraudulent purchaser than to look after and protect the interest of his ward, which he had theretofore betrayed. An entirely different situation would have been presented had the facts been presented to the county judge and an election been authorized by him. The rule announced in Pomeroy is a very reasonable one, and while it would not safeguard the minor's interest in all cases, persons desiring to bind the minor by an election should certainly expect to do no less than to have the guardian's act authorized by a court of competent jurisdiction of the subject-matter and of the person of the minor. In the instant case the guardian had made a fraudulent sale, and in bringing the action to have a lien decreed on the land for the purchase price, he recognized the validity of his own fraudulent act, and it will be manifestly inequitable and unjust to say that in so doing he acted for the minor. No court examined the facts and ordered this election. The guardian proceeded on his own responsibility, and, if his action under the facts in this case can be considered to work an estoppel because of the election of remedies, how easy it will be for a guardian to make a fraudulent sale of his ward's property and then place title beyond question by a proceeding of this character. Attorneys for the plaintiffs in error have insisted so strenuously that this case is controlled by Vose v. Penney, supra, that we

desire to say that the facts in the instant case have been carefully weighed and considered in accordance with the views expressed by this court in that opinion, and, as we have heretofore pointed out, the facts in that case are not identical with the facts in the instant case, but it is unnecessary here to discuss whether the difference in the facts between the two cases is sufficient to make a different rule applicable. It is sufficient to say that under the facts as presented in the instant case, it is our opinion that the minor is not bound by the election of remedies by her guardian.

The plaintiffs in error next contend that Carrie Imogene Moore has accepted the benefits of this sale since she became of age, with full knowledge of the facts respecting the sale, and has thereby ratified the same and is estopped from asserting the invalidity of the sale. The defendant in error received from Andrews on the purchase price of her lands more than $2,000 after she became of age, and she received the same knowing that it was being paid by Andrews on the purchase price of the lands. This sale was only voidable and was subject to ratification. Perkins v. Middleton, 66 Okla. 1, 166 Pac. 1104; Lasoya Oil Co. v. Sulkey, 40 Okla. 690, 140 Pac. 160. Section 5013, Comp. Stat. 1921, provides:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the person accepting."

Under this statute and the cases above cited, in order to constitute a ratification by accepting the benefits of the transaction, the party must have had full knowledge of the facts or ought to have known of such facts. The plaintiffs in error contend that Carrie Imogene Moore had full knowledge of the facts in this case, or, at any rate, ought to have had full knowledge of the same, and had the same opportunity to discover what the real facts were as the subsequent purchasers of the property who bought the same without any knowledge of the facts except such as were disclosed by the record, and which were equally available to the defendant in error. The finding of the trial court, although a general finding in favor of the defendant in error, must be considered as a finding of every material fact in her favor which is necessary to support the general finding, and must, therefore, be considered as a finding that the defendant in error did not have full knowledge of the facts at the time she accepted the benefits of the transaction, and was, therefore, not estopped from as-

serting the invalidity of the transaction. This finding will not be disturbed on appeal unless it is clearly against the weight of the evidence. The testimony discloses that, after the minor became of age and before she accepted the benefits of the transaction, she was advised and knew that the money was being paid to her mother for defendant in error's use and benefit and that it was being paid on a note of about $5,000 which Andrews owed to her because of his transaction in taking over the land from E. T. Bynum and agreeing to pay this amount of money to her. She knew that the land had been originally sold by her guardian to E. T. Bynum. During the time she was accepting the benefits from this transaction, she testified, she did not know and had not been advised as to the character of the transaction with Andrews and how it was that he owed her this money on her land; that she had not been advised in regard to the original sale of the land by her guardian or the fraudulent nature of the same. She testified that in the summer of 1920, her mother told her the details of the transaction and that the sale was a fraudulent one, also the circumstances of the transaction by which Andrews took over the land; that at that time she was also advised in regard to the loan of $14,000 which was originally placed on the allotment of the minor and E. M. Moore and Jessie E. Moore. No payments were accepted by the minor, according to her testimony, after she ascertained the facts in regard to the transaction from her mother in the summer of 1920, and the suit was filed by her on November 5, 1920. Under the facts in this case, we are unwilling to say that the finding of the trial court was clearly against the weight of the evidence on the question of ratification.

It is next contended that the cause of action of the defendant in error was barred by the statute of limitations. It is contended that the time provided by paragraph 2 of section 183, Comp. Stat. 1921, had run at the time the suit was brought and that the action was not begun within two years after the minor reached her majority as provided in section 184, Comp. Stat. 1921

The defendant in error contends that she arrived at her majority on the 6th day of November, 1918, and that, the suit having been filed on the 5th day of November, 1920, the same was filed within time. The plaintiffs in error admit that the suit was filed in time if this contention of the defendant in error is true, but they contend that the defendant in error reached her majority on the 5th day of November, 1918, and the time within which the suit could be filed

expired on the 4th day of November, 1920. It is admitted that Carrie Imogene Moore was born on the 6th day of November, 1900, and the dispute arises over the construction to be given to section 4972, Comp. Stat. 1921, which provides:

"Minors, except as otherwise provided by law, are: First. Males under 21 years of age. Second. Females under 18 years of age. The periods thus specified must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority."

The common-law rule was that an infant became of full age the first moment of the day before the anniversary of his birth, and this rule has been followed generally by the courts of this country. State v. Clarke, 3 Har. (Del.) 557; Wells v. Wells, 6 Ind. 447; Hamlin v. Stevenson, 4 Dana (Ky.) 597; Ross v. Morrow (Tex.) 19 S. W. 1090; Erwin v. Benton (Ky.) 87 S. W. 291. This rule was followed by the Circuit Court for the 8th Circuit in United States v. Wright, 197 Fed. 297. In none of the above cases were the courts construing a statutory provision similar to the one above quoted, and the rule announced in each of these decisions was the common-law rule. The existence of the above statute makes it necessary for us to determine whether this statute should be construed to mean the same as the rule at common law. California has a statute identical with the one under consideration and the Supreme Court of that state has construed the statute in two cases, but has reached a different conclusion in each case, although the latter opinion apparently relies upon the former to sustain it. In Ex parte Wood (Cal.) 90 Pac. 961, the court construes the statute in accordance with the rule announced at common law, and cites, in support of the holding, Ganahl v. Soher (Cal.) 5 Pac. 80 In the last cited case, the court stated that Henry Ganahl was born April 11, 1855, and, after citing the statute, said:

"Under the rule prescribed by section last quoted, Henry Gordon Ganahl became of age the first minute of the 11th day of April, 1876."

We are of the opinion that in Ex parte Wood, supra, there was no intention on the part of the court to depart from the holding in Ganahl v. Soher, supra, and it was through inadvertence that a different conclusion was reached. It is our opinion that the statute of this state changes the common, law, and a minor becomes of full age on the first minute of the anniversary of his birth, and that Carrie Imogene Moore became of full age on the first minute of the 6th day of November, 1918. Having reached this conclusion. it follows under section 884, Comp. Stat. 1921, that she had until the last minute of the 5th day of November, 1920, in which to file this action.

It is next contended that the defendants are innocent purchasers for value and without notice of any defect in the title, and they rely upon the doctrine announced in Berry v. Tolleson, 68 Okla. 158, 172 Pac. 630, in which the following language is used:

"Probate sales in this state are entitled to the same faith and credit of any judicial sale, and will not be set aside as against an innocent purchaser on proof of secret agreements between the guardian and the original purchaser, which are not disclosed by the record and cannot be ascertained by such investigation as would ordinarily be made by a reasonably prudent person."

We have no desire to depart from the doctrine announced in that case, but the instant case is controlled by the decisions in Allison v. Crummey, 64 Okla. 20, 166 Pac. 191; Thomas v. Huddleston, 65 Okla. 177, 164 Pac. 106, and Daniel v. Tolen, 53 Okla. 677, 157 Pac. 757. In the case last cited, the court said:

"A purchaser of lands, who buys in reliance upon the record title, is chargeable with all the notice brought to him by the records; and if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him."

In the instant case, the guardian's sale was made on May 9, 1910, to E. T. Bynum. On May 10, 1910, E. T. Bynum executed a mortgage on this land and the allotment of E. M. Moore and Jessie E. Moore to E. M. Moore to secure a note for $14,700. On May 9, 1910, W. C. Randolph, guardian of Carrie Imogene Moore, filed his return of sale showing the sale of the property in controversy to E. T. Bynum on May 9, 1910, and reciting that the sale was made for cash on confirmation of sale. On May 23, 1910, the guardian's sale was confirmed by the county court. On May 25, 1910, the guardian's deed was executed and delivered to E. T. Bynum. There is no recital in the return of sale or order of confirmation showing that the purchase price was paid and there was no account of sales or report filed showing the payment of the purchase price. The above were the facts presented to the trial court, and it was his duty to determine whether the purchasers from

E. T. Bynum and incumbrancers of the property were advised by this condition of the record of sufficient facts from which they could have ascertained the defects in the title, by such inquiry as an ordinarily prudent person would have made in view of the notice given in the record. In view of the holding of this court in the above cases, and in view of the fact that the record shows a mortgage was executed to E. M. Moore, father of the minor, on this property on the day after the sale was made and before confirmation thereof, we are unwilling to say that the finding of the trial court was clearly against the weight of the evidence, and the finding in that regard will not be disturbed by us.

It is next contended that the defendant in error cannot avoid the judgment recovered in her favor in the suit brought by her guardian to procure a lien in her favor of the purchase price of the land. The plaintiffs in error do not rely upon any title derived through this suit, as Andrews satisfied the judgment procured in that case and no sale of the land was ever made. Since we have held that the defendant in error was not estopped by the election of remedies, it does not appear to us that this suit or the judgment procured therein adds anything to the title of the plaintiffs in error.

It is next contended that the trial court erred in finding that the value of the rents received by the plaintiffs in error were equal to and offset the value of the improvements made by the plaintiffs in error and the amount of money paid to the defendant in error. An examination of the record convinces us that the finding of the trial court in this regard was not clearly against the weight of the evidence.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, and BRANSON, JJ., concur.