## TITTLE v. WADE.

No. 18639.　Opinion Filed Feb. 14, 1928.

(Syllabus.)

**1. Appeal and Error—Review—Sufficiency of Evidence in Case Triable Before Court.**

On appeal it is the duty of the court to approve the judgment of the court below in a case triable before the court, if it is not clearly against the weight of the evidence, but if it is against the clear weight of the evidence, the court should render such judgment as the court below should have rendered.

**2. Same—Judgment Sustained.**

Record examined, and held, sufficient to support the judgment of the trial court.

Error from District Court, Stephens County; E. L. Richardson, Judge.

Action by T. L. Wade to recover a portion of the allotment of Ellen Bacon, deceased; L. H. Tittle intervening. Judgment for plaintiff, and intervener brings error. Affirmed.

W. F. Semple and Rainey, Flynn, Green & Anderson, for plaintiff in error.

Sandlin & Winans and Bond & Bond, for defendant in error.

HEFNER, J. Judgment was rendered in the district court of Stephens county in favor of T. L. Wade, plaintiff below, and defendant in error here, and the intervener, L. H. Tittle, has appealed to this court and prays that the trial court be reversed and he be declared the owner of the lands involved herein.

The plaintiff sued to recover a portion of the allotment of Ellen Bacon, deceased. The only issue submitted to the trial court was whether or not Daniel Bacon was the father of Ellen Bacon, allottee of the land involved. If he was the father, he was the sole heir of Ellen Bacon, deceased, and plaintiff was entitled to recover. The trial court found that he was the father and sole heir.

The question for this court to determine is whether or not the decree of the trial court is supported by sufficient evidence. This question is neither free from doubt nor easy of solution.

The intervener and plaintiff in error herein contends that, while Daniel Bacon had once been married to Lizzie Bacon, he had left about 1903 and married Epsie Duke and had not lived with Lizzie Bacon for about two years prior thereto. There is evidence in support of this theory.

The plaintiff, among other things, introduced the entire enrollment record of Ellen Bacon, the allottee, whose land is in controversy. It consists of her census card, three birth affidavits, five letters, and a copy of the approved roll. Her census card shows Daniel Bacon as her father and Lizzie A. Bacon as her mother.

It is admitted that Daniel and Lizzie A. Bacon were married about 1888 and that they separated about 1893. About 1895 Lizzie married Louis Frazier. He died soon thereafter and she again married Daniel Bacon. Plaintiff introduced in evidence the divorce docket of the district court of the Mosholatubee district, Choctaw Nation. This docket disclosed several pending · divorce cases. The first one is shown to have been dismissed on the 23rd day of November, 1905. In the second one the petition for divorce was granted on the 14th day of November, 1905. The third case is that of Daniel Bacon v. Lizzie Bacon, No. 457, for divorce. The petition is shown to have been granted on the 22nd day of November, 1905. This was a year and two days after the birth of Ellen Bacon. There are other divorce cases shown on the docket, but it is not necessary to mention them. These records are now in the office of the Superintendent for the Five Civilized Tribes at Muskogee, Oklahoma. If this were all of the evidence, the question here for solution would be easily solved.

The intervener, however, introduced in evidence the census card of Louisa Bacon and Mattie Bacon. This card is dated May 10, 1905, approved July 7, 1905, by Tams Bixby, Commissioner, and approved by the Secretary of the Interior on August 2, 1905. This card shows that Louisa Bacon was two years old on March 4, 1905, and that Mattie Bacon was one year old on that date. It further shows them to be of the one-half blood and that Daniel Bacon was the father and Epsie Bacon the mother.

On this card, under the heading of remarks, we have these statements:

"Application for the enrollment of Nos. 1 and 2 received April 28, 1905. Daniel Bacon, father of Nos. 1 and 2, is also father of Nos. 1 and 2 on Choctaw card N. B. 1388 by his wife Lizzie A. Bacon: This notation is error. Daniel Bacon is not father of Nos. 1 and 2 on newborn card 7-1388. Testimony as to marriage of parents of Nos. 1 and 2 filed in Chickasaw Jacket No. 1811."

The newborn card 1388 mentioned here is the census card of Ellen Bacon, the deceased allottee whose land is in controversy.

The census card of Louisa Bacon on which the above notation was made is no part of the enrollment record of Ellen Bacon, neither is there any reference of any kind or character in the entire enrollment record of Ellen Bacon to that card nor the notation thereon. If the recitations on the census card of Louisa Bacon are true, then Daniel Bacon is not the father of Ellen Bacon and would not be her heir. The recitation on the Louisa Bacon census card is in direct conflict with the facts shown on the census card of · Ellen Bacon. It therefore follows that the statements on both cards cannot be true. There is nothing in the record to show when the notation on the Louisa Bacon card was made to the effect that Daniel Bacon was not the father of Ellen Bacon. It must, however, have been made before July 7, 1905, because that is the date when Tams Bixby, Commissioner, approved the enrollment of Louisa Bacon, and the record was then sent to Washington and there approved by the Secretary of the Interior on August 2, 1905.

Let us now consider the enrollment record of Ellen Bacon. There were two applications for enrollment made for her and her twin sister. The applications were made under different names and by different individuals. The first application was transmitted to the Commissioner for the Five Civilized Tribes on April 19, 1905, by Mr. J. S. Mullen. This application was made under the name of Ellen and Susan Bacon. The second application was made by Mr. O. S. Lawrence under the name of Ellen and Susan Jackson, on the 1st day of May, 1905. The applications were made on blanks furnished by the department. The department required an affidavit from the mother of the newborn and the midwife or attending physician.

In the first application the affidavit of the mother is as follows:

"I, Lizzie A. Bacon, on oath state that I am 40 years of age and a citizen by blood of the Choctaw Nation; that I am the lawful wife of Daniel Bacon, who is a citizen, by blood, of the Choctaw Nation; that a female child, one of twins, was born to me on the 20th day of November, 1904, that said child has been named Ellen Bacon and was living March 4, 1905."

The affidavit of the midwife is as follows:

"I, Martha McGee, a midwife, on oath state that I attended on Mrs. Lizzie A. Bacon, wife of Daniel Bacon, on the 20th day of November, 1904; that there was born to her on said date a female child; and that said child was living March 4, 1905, and is said to have been named Ellen Bacon."

The first application was sworn to on April 17, 1905. The second application was sworn to on the 1st day of May, 1905.

These two applications for enrollment under different names and the evidence contained in Chickasaw jacket No. 1811 were doubtless the cause of the notation on the census card of Louisa Bacon that Daniel Bacon was not the father of Ellen Bacon. After both applications were in and on file, the Department wrote a letter direct to Lizzie Bacon. This is the first letter that had been written directly to her by the Department, the other letters being directed to Mr. Mullen or Mr. Lawrence, the individuals transmitting or making the applications. In this letter the Department called her attention to the difference between the two birth affidavits submitted, and, in addition thereto, on June 15, 1905, it addressed a letter to Mr. O. S. Lawrence, who was the individual who had filed the second application for enrollment under the name of Jackson. The letter is as follows:

"Muskogee, Indian Territory,
"June 15, 1905.
"O. S. Lawrence,
"Legal, Indian Territory.
"Dear Sir:

"There is enclosed herewith for execution applications for the enrollment of Ellen Bacon and Susan Bacon, born November 20, 1904.

"In regard to the execution of these affidavits your attention is called to the Commission's letter of May 16, 1905, to Lizzie A. Bacon, Coalgate, Indian Territory, which contained affidavits similar to the ones enclosed herewith, and which read in part as follows:

"'It is noted in the affidavits heretofore filed with the Commission on May 5, 1905, that you gave the names of the applicants as Susan Bacon and Ellen Bacon, stating that Daniel Bacon is their father and that you are his lawful wife. But in the affidavit filed May 11, 1905, you gave their names as Susan Jackson and Ellen Jackson, without giving their father's name, stating, in the place provided for his name, that you are the daughter of Joe Jackson.

" 'In the enclosed applications the father's name is left blank and the names of the children inserted as Ellen Bacon and Susan Bacon. If Daniel Bacon is their father please insert his name, but if the father is unknown, as the affidavits of May 11, 1905, and Mr. O. S. Lawrence's letter of transmittal of May 1, 1905, suggests, please fill out the blanks accordingly. The surnames of the applicants should follow that of their parents, which, in either of the above mentioned cases, would be Bacon.'

"There has been no reply to this letter and as no further action can be taken in this matter until the affidavits above referred to are returned to this office properly executed, your attention to this matter will be appreciated.

"In having these affidavits executed care should be exercised to see that all names are written in full as they appear in the body of the affidavits, and in the event either of the persons signing the affidavits is unable to write, signature by mark must be attested by two witnesses. Each affidavit must be executed before a notary public and the notarial seal and signature of the officer must be attached to each separate affidavit.

"Respectfully,

"Chairman."

From this letter it will be seen that the Department refused to take any further action in the enrollment of Ellen and Susan Bacon until the affidavits referred to were returned and filed with it, giving the name of the father, or in event the father was unknown, to so state. In other words, the Department, noticing the difference in the names of the applicants in the two applications and that the name of the father was in doubt, made an investigation of the matter and required further proof thereon.

In obedience to the request of the Department, Lizzie Bacon executed the affidavit which is as follows:

"I, Lizzie A. Bacon, on oath state that I am 40 years of age and a citizen by blood of the Choctaw Nation; that I am the lawful wife of Daniel Bacon, who is a citizen by blood of the Choctaw Nation; that a female child was born to me on 20th day of November, 1904, that said child has been named Ellen Bacon, and was living March 4, 1905."

In this affidavit, Martha McGee, as midwife, made the following affidavit:

"I, Martha McGee, a midwife, on oath state that I attended on Mrs. Lizzie A. Bacon, wife of Daniel Bacon, on the 20th day of November, 1904; that there was born to her on said date a female child; that said child was living March 4, 1905, and is said to have been named Ellen Bacon."

These affidavits were dated June 23, 1905, more than two months after the first affidavits were made. This birth affidavit is a copy of the first birth affidavit that was filed, both of which affidavits were sworn to before W. B. Harl, notary public. If these affidavits were true, Daniel Bacon was the father of Ellen Bacon and the husband of Lizzie A. Bacon.

It is worthy of note also that the Department addressed the letter of June 15th to O. S. Lawrence, who was the individual who had made the second application under the names of Ellen and Susan Jackson. Mr. Lawrence undoubtedly made an investigation and found his first affidavits were wrong, because, after he had received the letter from the Department enclosing the blank affidavits to him for further evidence, affidavits were returned to the Department which disclosed that Daniel Bacon was the father of Ellen Bacon and the husband of Lizzie Bacon. It is clear that the Department did make an investigation, both as to who was the father of Ellen Bacon and the husband of Lizzie Bacon.

The investigation was completed on June 28, 1905, and on August 26, 1905, Tams Bixby, Chairman of the Commission, approved the enrollment and immediately sent the same to Washington to be approved by the Department there. This approval was on September 23, 1905. The application was first made on May 8, 1905, and was held in abeyance from May 8th to September 23rd before it was finally approved.

The affidavit in her first application for enrollment was dated April 17, 1905. The affidavit in her second application for enrollment, which was under the name of Ellen Jackson, was sworn to on the 1st day of May, 1905. This is the affidavit that caused the doubt as to who the father of Ellen Bacon was. It was doubtless the statements in this affidavit and certain evidence that had been given in the application of Epsie Bacon and her daughter, Louisa Bacon, for enrollment that caused the Department to place the notation on Louisa Bacon's census card that Daniel Bacon was not the father of Ellen Bacon. In any event, we do know the Department

made an investigation of the matter, and after the investigation was made, the Department approved her enrollment and placed her on the final rolls and caused her enrollment records to show that Daniel Bacon was her father and the husband of Lizzie Bacon.

The oral evidence showed that Lizzie Bacon had lived in the home of Martha McGee from girlhood until after these children were born. She had never lived anywhere else. Martha McGee was a relative of Lizzie Bacon and was the midwife who made the affidavits in two of the birth certificates in the enrollment record of Ellen Bacon. Having reared Lizzie Bacon and having been with her all of her life, she was certainly in a good position to know the circumstances surrounding the birth of Ellen and who her father was. In both her affidavits she states that Lizzie was the wife of Daniel Bacon and that he was the father of Ellen.

Daniel Bacon, the father, himself testified in the trial of this case. He is an illiterate full-blood Indian and his testimony was taken through an interpreter. He testified that Lizzie was his wife and that Ellen was his daughter. On cross-examination, however, he also testified that he was the father of Louisa and Mattie Bacon and that he was the husband of Epsie. Later in his testimony, he denied that he had ever married Epsie or that he was her husband.

The intervener introduced in evidence a certified copy of the testimony taken before the Department in the matter of the application of Epsie Bacon for enrollment found in Chickasaw jacket No. 1811. This showed that Daniel Bacon had testified in this hearing in 1904, and that he had stated he was the husband of Epsie and the father of Louisa and Mattie Bacon. When asked about this testimony he denied having given the same before the Department. He doubtless did so testify.

The census card of Louisa and Mattie Bacon shows them to be the children of Daniel Bacon, and the chances are this is true. It does not, however, necessarily prove that he was not the husband of Lizzie Bacon and the father of Ellen. Of course, he could not have been the lawful husband of both women at the same time.

A significant fact is that Daniel Bacon procured a judgment for divorce from Lizzie Bacon on the 22nd day of November,

1905, which was about one year after the birth of Ellen Bacon. The intervener, however, contends that the Choctaw court did not have jurisdiction to render a decree of divorce, because it had been abolished by the Act of Congress of April 28, 1904. It is not a question of the validity of the judgment of the Choctaw court. If the Choctaw court did not have jurisdiction to render the judgment, then its act was a nullity and the marriage relation between Daniel Bacon and Lizzie Bacon was not dissolved. On that portion of the docket of the court introduced in evidence five divorce cases are shown. The action of the court on each case is shown. It is clear that the court thought it had jurisdiction. In all probability at that time the jurisdiction of the court had never been questioned, although it was later held that the court had been abolished.

In any event, it is certain that Daniel Bacon and Lizzie Bacon thought they were husband and wife at the time the suit was filed, and the child was born about a year before that date.

Sim McGee, a full-blood Indian, testified on behalf of the intervener. His evidence shows that he had always lived in the home of Martha McGee. He knew when Ellen Bacon was born. He testified Daniel had not been around the place for about 18 months before the child was born and was not her father. He remembered about the divorce proceedings between Daniel and Lizzie. He testified the divorce was granted and that it was granted in 1903. He was positive it was in August, 1903. The record shows that it was in November, 1905. We think he was just as likely to be mistaken about the time Daniel was around the place as he was as to when the divorce was granted. At the time he testified, about a quarter of a century had intervened since the events had happened about which he was testifying.

To summarize the enrollment records, it may be stated that there were two applications made for the enrollment of Ellen Bacon and her twin sister. The first application was made under the name of Ellen Bacon. The second application was made under the name of Ellen Jackson. These applications were made by different individuals acting for and on behalf of the claimants. The Department discovered that, although the applications were being made under different names, the applicants were the same individuals. It made

an investigation of the matter, and after such investigation, it approved the enrollment of Ellen Bacon, and the approved census card shows Daniel Bacon to be her father. Had the Department come to any other conclusion, we think it would have corrected the census card of Ellen Bacon and caused it to speak what it considered to be the truth.

It is true that the enrollment records are not conclusive evidence as to who the heirs of the deceased allottee are, but, under the evidence in this case, we do not think the judgment of the trial court is against the weight of the evidence, but, on the contrary, we think it is sufficient to support it.

The judgment is affirmed.

MASON, V. C. J., and HARRISON, PHELPS, HUNT, and CLARK, JJ., concur.

Note.—See under (1) 4 C. J. p. 880, §2853; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 75. (2) 4 C. J. p. 1129, §3122.