## CRITCHLOW et al. v. BACON.

No. 16989. Opinion Filed Feb. 11, 1930.

Rehearing Denied March 18, 1930.

Geo. N. Otey, Trice & Davison, and Cruce & Potter, for plaintiffs in error.

Warren & Welch, R. H. Warren, and R. L. Disney, for defendant in error.

ANDREWS, J. The defendant in error was the plaintiff in the trial court, and the plaintiffs in error were defendants in that court. The parties will be referred to as "plaintiff" and "defendants."

Plaintiff instituted this suit on October 8, 1923, and on March 11, 1924, he filed the amended petition, on which the cause was tried. The object of the action was three-fold: First, to cancel a certain oil and gas lease; second, to cancel a certain royalty conveyance; and, third, to cancel a certain warranty deed.

The amended petition alleged, and it is admitted, that the plaintiff is a full-blood Choctaw Indian, duly enrolled as such, and that his restrictions were never removed. It was alleged, and is admitted, that one Silly Frazier was a full-blood Choctaw Indian, duly enrolled as such; that she, by virtue of her tribal status, received an allotment; that her restrictions were never removed; that she died intestate, unmarried, without issue and the owner of her allotment on the 20th day of March, 1912; that upon her death she left surviving her as her sole and only heirs at law her half-brother, Elias Bacon, and her half-sister, Ellen

Bacon, each of whom inherited an undivided one-half interest in her allotment; that the interest inherited by Elias Bacon is owned by some of the defendants, and that that interest is not directly involved in this action.

It was further alleged and is admitted that Ellen Bacon was a full-blood Choctaw Indian, duly enrolled as such; that by virtue of her tribal status she received an allotment; that her restrictions were never removed; that she died intestate, unmarried and without issue, on or about March 19, 1918; that upon her death she left surviving her as her sole and only heir at law her father, the plaintiff herein; that she was about 14 years of age at the time of her death; that her guardian had sold an oil and gas mining lease on a part of the land inherited by her from the estate of Silly Frazier, the validity of which lease is herein attacked; that a subsequent guardian had sold the royalty on the same land, the validity of which sale is herein attacked; that she owned the remainder of the land inherited by her from said estate at the time of her death; that she made no attack on either of the sales, and that no one made any attack thereon for her. It was further alleged and admitted that the plaintiff executed a warranty deed to all of the land involved in this action and that the deed was approved by the county court of Coal county, the court having jurisdiction of the estate of Ellen Bacon, deceased.

The petition alleged many reasons why the oil and gas mining lease should be declared void and why it should be canceled. A demurrer to the amended petition was sustained on the ground that the same did not state facts sufficient to warrant a cancellation of the oil and gas mining lease. No appeal was taken from that order, and it has become final. In so far as that contention is concerned, this court must consider that the oil and gas mining lease was regularly executed and delivered and that it was and is a valid and subsisting oil and gas mining lease. The record shows the owners of that lease accounted to the guardian for the oil and gas produced under that lease up to the time of the approval of the royalty conveyance.

The petition alleged many reasons why the sale of the royalty should be declared void and why it should be canceled. We will discuss those allegations, with the evidence as to each, separately. It was alleged, and is admitted, that at the time of the royalty sale there were nine oil and gas wells producing from the leased land and that the royalty therefrom was attempted to be con-

veyed. It was alleged that the defendant Patsy Greenan had been appointed guardian of the estate of Ellen Bacon and that he was "a close business associate" of the defendant H. W. Marcum. It is admitted that Greenan was appointed guardian, but there was no evidence to support the allegation that he was a "close business associate". It was alleged that "a conspiracy was entered into between said guardian and the owner of said lease," but there was no evidence to support that allegation. It was alleged that the purported sale of the royalty was never authorized or ordered by the county court; that no notice of sale was given; that the sale was not for cash, but was a barter; that the interest of the minor was "bartered in a grossly fraudulent manner in part consideration of a parcel of real estate" and part consideration of $2,500 cash. The evidence shows that the guardian filed in the county court of Coal county a petition to sell the royalty interest. That petition properly described the land as a part of section 3, township 4, south, range 3 west. The prayer of the petition described the section number as "4" and the notice of sale described the section number as "4". The report of sale described it as "3" and the order confirming the sale described it as "3". The order for sale and notice of sale were otherwise regular, and there was no other irregularity in the other papers. The report of the sale and the order confirming the sale show that the consideration for the sale was $2,500 and a deed to certain other land. The original deed of conveyance was not shown by the evidence herein, but the records of the county clerk show that the section number was "4" in typewriting and "3" in pen and ink, and that the one was written over the other. The remainder of the record of the deed was in typewriting. The land is situated in Carter county. The sale took place in open court in Coal county. The notice of sale was by posting three copies in Coal county. On October 16, 1924, an order nunc pro tunc was made correcting the order for the sale so as to make it read "section 3". The petition properly described the land, and the error in the description in the prayer of the petition is immaterial. Fraley et al. v. Wilkinson et al., 79 Okla. 21, 191 Pac. 156. The error in the order for sale was corrected nunc pro tunc, and the order nunc pro tunc was valid. Downing v. Thornton et al., 96 Okla. 141, 220 Pac. 592. The error in the notice of sale was cured by the confirmation of sale. Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453.

There is some question as to the validity

of this royalty sale, but whether or not it is valid, the defendants went into possession thereunder and remained in possession thereof and collected the rents and royalties from the lease. Whether the conveyance is valid or not, the record of the instruments of conveyance and the possession of defendants materially affected the value of the rights of the plaintiff in the land. Certainly his title thereto was of considerable less value than it would have been had he been able to deliver a clear title and possession thereof. The fact that the present litigation is necessary to determine it invalid is sufficient in itself to show that a prospective purchaser would not have paid plaintiff the full value of the land.

There is another thing that materially affected the value of plaintiff's interest in this land and that is the doubt that existed as to whether or not plaintiff was an heir of Ellen Bacon.

On the 2nd day of January, 1926, one T. L. Wade filed a petition in the district court of Stephens county to quiet the title to certain tracts of land comprising a part of the allotment of Ellen Bacon. One L. H. Tittle intervened and alleged that Ellen Bacon died on March 19, 1918, unmarried, intestate and without issue, leaving surviving her no father nor mother and no brother nor sister, but leaving as her sole and only heirs at law the minor children of her brother, Elias Bacon, through whom he claimed title. Judgment was rendered in that cause on April 11, 1927, and this court in the case of Tittle v. Wade, 129 Okla. 228, 264 Pac. 200, decided February 14, 1928, said:

"The only issue submitted to the trial court was whether or not Daniel Bacon was the father of Ellen Bacon, allottee of the land involved"

—and:

"This question is neither free from doubt nor easy of solution."

After a review of the evidence in the case, the court decided:

"On appeal it is the duty of the court to approve the judgment of the court below in a case triable before the court, if it is not clearly against the weight of the evidence but if it is against the clear weight of the evidence, the court should render such judgment as the court below should have rendered."

—and sustained the judgment of the trial court.

We refer to this only for the purpose of showing that as late as 1926 there was considerable question as to whether or not Dan Bacon was the father of Ellen Bacon and that that issue was not determined until 1928.

This brings us to a consideration of the warranty deed from the plaintiff, which he now alleges was "fraudulently and wrongfully" procured from him by "false and fraudulent representation and misrepresentations," for a consideration of $1,000, which was "wholly inadequate and so small in comparison with the real value of said real estate that of itself said consideration and the payment thereof amounted to and constituted fraud on the part of said grantees". He further alleged that the value thereof was $200,000; that he "is an ignorant and illiterate Indian, unable to read and write, and that he was entirely ignorant at the time of said transfer of the value of said real property, and that he was not informed thereof by his grantee, but was kept in ignorance of the real value of said real estate and was in that manner imposed upon by the grantees in said deed"; that the land had nine wells thereon, producing oil and gas in large quantities; that "plaintiff was not informed by the defendants that said land had any oil or gas value or were producing oil or gas, but was kept in total ignorance thereof, and was informed and believed that the lands which he was selling were of little value"; that he relied upon the statement and representations of said grantees, and would not have executed said deed had he known of the true value of said real estate; that "he intended to sell and deed only his interest in the allotment of Ellen Bacon and had no intention of selling or disposing of his interest in the allotment of Silly Frazier," and had no knowledge that he had any interest in the allotment of Silly Frazier, and that the fraud was not discovered by plaintiff until less than two years prior to the filing of the petition.

If there was any fraud in the royalty conveyance, it was a fraud against the rights of Ellen Bacon and not against this plaintiff. Plaintiff had no interest in the land at that time. The plaintiff cannot, after having acquired land by inheritance, contend that he did not discover the fraud until a later date. The statute of limitations as to the fraud applies to the person defrauded and not some individual who inherits from the person defrauded.

The evidence shows that on December 24, 1918, the plaintiff made a warranty deed to the defendant Henry W. Marcum covering a portion of the allotments of Silly Frazier,

Ellen Bacon, and Susan Bacon for a consideration of $1,000, which was approved by the county court of Coal county on December 28, 1918.

On the date of the approval of the deed from the plaintiff to Marcum the county court of Coal county approved a contract that had been executed by the plaintiff whereby Moore & West, attorneys, were employed by plaintiff to represent him in recovering the land involved in this action as a part of the estate of Ellen Bacon, deceased, and in which plaintiff agreed to assign, transfer, and set over to them a one-half interest in the property involved herein.

The petition for the approval of the deed from plaintiff to Marcum described the land involved in this action and alleged that all of the property had been disposed of by other parties claiming to be the sole and only heirs of Ellen Bacon and Susan Bacon and that it was being held adversely to the plaintiff.

On September 22, 1919, the county court of Coal county in a proceeding to determine heirs in the estate of Ellen Bacon, deceased, found and decreed that plaintiff was the sole and only heir of Ellen Bacon, and on October 9, 1919, the county court of Coal county set aside the real estate involved in this action to the plaintiff for the use and benefit of the defendant Marcum under his deed from the plaintiff.

In support of his allegations with reference to his deed, plaintiff produced the following testimony: He testified that he was 60 years of age and could neither read nor write; that he could not talk much; that on Christmas Day in 1918, Judge West and Mr. Marcum came to his place; that Judge West did the talking and Judge West asked him if he wanted to sell some land—

"A. He stated if I wanted to sell some land he would buy some. Ellen's allotment was the land in question. Q. He wanted to buy Ellen's allotment, did he? A. Yes, sir; that was all."

—that his wife interpreted for him and told him they wanted to buy Ellen's land; "he stated if I wanted to sell the land to come down the next day and he would pay me"; that the next day he, Judge West and Marcum went to Coalgate, where he signed some papers; that "I was under the impression at that time I was selling Ellen's allotment, as he told me that was what he wanted"—

"Q. You know you were selling any oil land? A. No, sir; I did not know, he did not tell me. Q. Did you know you were

selling Silly Frazier's allotment and Susan Bacon's allotment too? A. No. sir; I did not know anything about it. Q. Did you know at that time you got Silly Frazier's land through Ellen? A. No. sir; I did not. Q. Was there anything said there between you and Judge West or Mr. Marcum about Silly Frazier's land, or any oil land? A. No, sir; I did not hear anything of it."

—that he learned of the oil land about two years before the trial, and that he received $1,000 for the deed.

Attention is called to the fact that plaintiff testified fluently, in answer to his attorney's questions, as to his two marriages, the birth of his children, the birth of his wife's children, his divorce where he lived and other things, but when asked about the execution of the deed in question and the facts in connection with the same, an interpreter was called and used.

On cross-examination he testified that he knew that Elias and Ellen were brother and sister; that he knew that Elias owned an interest in the Silly Frazier land; that he had known Judge West and Mr. Marcum for a long time; that he signed the deed; that he received the $1,000 for it and that he was trying to sell the land he inherited from Ellen.

His wife testified that they "Come out there and said he wanted to buy Ellen's allotment, if you want to sell it, and Dan said—he did not say much about it, and he said if he wanted to sell it he would buy it."

It will be noted that the testimony as to what was said between the parties as to the sale of the land is limited to the conversation that took place at plaintiff's home on the day before they went to Coalgate and made the sale. There is no record of any conversation at Coalgate on the day of the execution of the deed. There is nothing in this testimony to show an offer or an acceptance. No one says how much was offered for the land. No one says that any offer was accepted. From this testimony no one can conclude that any sale took place. There was certainly no sale at the home. If a sale took place, it must have been after plaintiff left home. It will be noted that his wife did not go with him to Coalgate. There is no testimony as to what took place at Coalgate except that of the plaintiff himself and the witnesses of the defendant. The burden was on the plaintiff, yet the plaintiff did not produce the testimony of the county judge who approved the conveyance, and he did not account for his failure to produce the county judge. The statement of plaintiff as to his intentions at Coalgate on the

day he made the sale and executed the deed are self-serving to the highest degree. There is nothing to show that he communicated his intentions to the defendants. His "intentions" and his "impressions," what he knew about and what he did not know, are not binding on any one. There was no confidential relationship between plaintiff and defendants shown. There is nothing to indicate any duty on the part of defendants other than the duty they would owe to any one who sold them land.

This record nowhere shows the value of the property conveyed by this deed. The burden was on the plaintiff to sustain his allegations as to value. There was not even an attempt to show the value of the land. If that had been shown it would have been incompetent, for plaintiff was not selling the land free and clear. It was subject to a valid oil and gas mining lease. It was subject to at least a claim of a valid royalty conveyance duly recorded and accompanied by possession thereunder. On the question of value there was no evidence, and that question is eliminated from further consideration.

His allegations of ignorance, want of business acumen, lack of knowledge of values, want of knowledge of oil wells or that oil was being produced from the land, and his belief that the land was of little value can avail him nothing in view of the approval of the conveyance by the county court and the failure to prove any fraud in the procuring of the approval thereof. The petition for the approval of the deed was submitted to the county court, and the county court approved the same. The purpose of the act of May 27, 1908, was to put the Indian on an equality with the prospective grantee in the manner of business sense or acumen, and when this transaction is examined under the rule followed by this court in Miller v. Gregory, 132 Okla. 48, 269 Pac. 303, Hope v. Foley, 57 Okla. 513, 157 Pac. 727, and Tiger, et al. v. Creek County Court, 45 Okla. 701, 146 Pac. 912, his want of business judgment and his inability to read and write are insufficient to offset the approval of the conveyance by the county court. Defendants offered testimony of Judge West to the effect that he had known the plaintiff at Coalgate for a long time; that he talked with the plaintiff and went with him to Coalgate, where he made a contract with plaintiff to represent him; that that contract was approved by the county judge; that the plaintiff made the deed to Marcum; that he represented the plaintiff in the transaction; that he thought the consideration paid was all that plaintiff could get out of it in the

condition in which the title was; that the mineral rights had been sold and that it was not a valuable property. On cross-examination he testified that he had been the district judge, that the $1,000 paid was for the plaintiff's interest, and that he sold his interest at a later date. H. W. Marcum testified that he bought a one-half interest in this land from Elias Bacon; that he bought a lease on the land from E. T. Wakeman; that he bought the royalty from the guardian; that the guardian wanted to sell it; that he talked to Walter Critchlow, and at the public auction he paid $2,500 and gave a deed to the tract of land, which he valued at $2,500; that about a year afterward he sold Greenan a 1/64 interest or one-eighth of the royalty for $1,250; that he went with Judge West to see the plaintiff; that Judge West told the plaintiff that if he did not do something about it he would lose the property; that the plaintiff and Judge West made a contract on a fifty-fifty basis; that he went over to Coalgate with the plaintiff and Judge West; that he told the plaintiff he would be buying a lawsuit; that he bought the land. On cross-examination Patsy Greenan testified that he sold the royalty for what he considered to be $5,000, $2,500 of which was in cash and the remainder in land. W. S. Critchlow testified that he owned an interest in the land; that there were nine producing wells thereon; that he paid $2,500 for his interest; that he did not sell Patsy Greenan any interest in the royalty, and did not know of the sale until sometime afterward; that he bought a 1/32 part of the royalty for $2,500. The record discloses nothing that in any way tends to prove fraud in the procuring of the deed from the plaintiff other than the testimony of the plaintiff and his wife.

The plaintiff had an interest in these estates. At the date of his deed that interest was doubtful, and even his lawyer did not know of what it consisted. The lease and royalty conveyance had been executed before he acquired any interest in the land. The offer of $1,000 for his deed was an offer for something he was not sure that he owned. He took the money, executed a deed to the land and an application for the approval of the conveyance, and that conveyance was regularly approved. Thereafter, it was determined that he was the owner of the land at the time he made the deed, and when it was so determined he decided that he wanted the land back. He then decided that what he had actually owned was worth more money than what he thought he owned. He wants the land returned on his statement of what his intentions were and what he knew and what he did not know.

To sustain the finding of the trial court this court must hold that the testimony of the defendants, supported by the testimony of the plaintiff's lawyer, backed up by the notary's certificate and the county judge's approval of the conveyance, is not sufficient, when weighed against the unsupported testimony of the plaintiff, to show that the judgment is clearly against the weight of the evidence.

If, after plaintiff had executed the deed and received the money, it had been determined that plaintiff was not the father of Ellen Bacon, or that she was his illegitimate child, there could have been no contention that the consideration paid was not adequate. A man cannot gamble in this manner and then have a conveyance set aside for the reason that it later appears that he made a poor trade.

It is well settled in this jurisdiction that the evidence necessary to cancel the deed on the grounds of fraudulent procurement must be clear, cogent, and convincing, and the same rule applies to the reformation of a contract. The rule is stated in Owen v. United States Surety Co., 38 Okla. 123, 131 Pac. 1091, that

"* * * the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith"

—and in Burch v. Staples, 70 Okla. 245, 174 Pac. 271:

"In order to justify a reformation of a contract, the evidence must be full, clear, and unequivocal, and convincing as to the mistake of (and) its mutuality. Mere preponderance of evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

See, also, Cantrell v. O'Neill, 109 Okla. 238, 235 Pac. 232; King v. Turner, 109 Okla. 77, 234 Pac. 564.

In Moore v. Adams et al., 26 Okla. 48, 108 Pac. 392, Mr. Justice Williams announced the rule, in an Indian case, in the syllabus, to be as follows:

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions.

"(a) It should be of such weight and cogency as to satisfactorily established the wrongful conduct charged; honesty and fair dealing as a rule being presumed.

"(b) When it lies within the power of a party to an action to produce evidence upon an issue and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party."

This leaves for consideration only the question of the intent of the plaintiff in making the deed. It is true that plaintiff testified that he did not intend to sell the Silly Frazier land, but the deed, petition for approval, and the order approving recite an intent to convey the land. In addition thereto, there is the testimony of the attorney for the plaintiff, Judge West, and the testimony of the grantees in the deed.

This testimony shows that the attorney for the plaintiff had held the office of district judge in Coal county and had been one of the Commissioners for this Supreme Court, and the county judge who approved the conveyance was one of our Supreme Court Commissioners.

In this case, it was not the plaintiff, an illiterate full-blood Indian, dealing alone with a white man, but it was this plaintiff with the aid and advice of a lawyer of 25 years' standing who had been a district judge and a Commissioner of this Supreme Court dealing with a white man subject to the approval of the county court and the county judge who has been a Commissioner of this Supreme Court. There is nothing in the record to show any conspiracy between Judge West, Judge Threadgill, and Marcum. While the allegations of the amended petition are that plaintiff would not have executed the deed if he had known the true facts there is nothing in the record to sustain this allegation. As was said by this court in Johnson v. Valleau, 110 Okla. 137, 236 Pac. 871:

"To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) that all of these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery."

If it was a question of weighing evidence, we would be inclined to say that the testimony of the two grantees in the deed would be at least equal to that of the plaintiff and his wife. When we find that testimony supported by that of the attorney for the plaintiff and the instruments themselves duly acknowledged and the approval of the convey-

ance, we can come to no conclusion other than that the plaintiff failed to establish a case and that the record shows that the judgment of the trial court is clearly against the weight of the evidence.

Under the rule hereinbefore quoted, it is the duty of this court to render the judgment that the trial court should have rendered, and in conformity thereto it is ordered that the judgment of the trial court be, and it is, vacated, and that the prayer of the plaintiff be denied and that the defendants herein recover their costs.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. RILEY, J., dissents.

---

RILEY, J. (dissenting). The judgment of the trial court canceled a conveyance to Marcum executed by Dan Bacon, an aged illiterate full-blood Choctaw Indian, of his interest in 1,400 acres of land upon which were nine producing oil wells, based upon a recited consideration of $1,000. A part of the land consisted of the estate of Ellen Bacon, deceased daughter of grantor. It appears that grantee, some years prior to the instant deed, had acquired an oil and gas lease upon these lands, and that he thereafter, through a purported guardianship sale, acquired a royalty deed to Ellen Bacon's land. The guardian recorded a conveyance of one-fourth interest in this royalty to himself. The proceedings of that guardianship sale, in addition to at least gross irregularities, recited as a consideration a barter prohibited by law, section 1480, C. O. S. 1921, and denounced by uniform decision. McCoy v. Mayo, 73 Okla. 17, 174 Pac. 491; Morris v. Sweeney, 53 Okla. 163, 155 Pac. 537; Am. Inv. Co., v. Brewer, 74 Okla. 271, 181 Pac. 294; Perkins v. Middleton, 66 Okla. 1, 166 Pac. 1104; Pyeatt v. Estes, 72 Okla. 160, 179 Pac. 42; Berry v. Tollison, 68 Okla. 159, 172 Pac. 630; Brooks v. Tucker, 83 Okla. 255, 201 Pac. 643; Vose v. Penny, 78 Okla. 238, 190 Pac. 97; Bridges v. Rea, 64 Okla. 115, 166 Pac. 416; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Atkinson v. King, 93 Okla. 37, 219 Pac. 914; Scott v. Gypsy Oil Co., 112 Okla. 13, 239 Pac. 889. We quote:

McCoy v. Mayo, supra: "The sale of a minor's real estate, under an order of the county court having jurisdiction of such estate, in consideration of part cash and part by the conveyance of property, is absolutely without jurisdiction of the county court, and such sale is void, notwithstanding the procedure of such sale is otherwise in strict conformity with the probate laws of this state."

Perkins v. Middleton, supra: "A sale of the ward's real estate can only be made for money, and a conveyance thereof in exchange for other land is unauthorized."

In Berry v. Tollison, supra, it was held that an exchange of minor's property instead of a sale for money "constitutes fraud upon the estate of the ward, and the sale may be set aside in an action against the purchaser, or any person acquiring rights in said lands with knowledge or chargeable with notice of such fraud."

In Allison v. Crummey, supra, it was held:

"A guardian has no authority to sell his ward's lands for anything but cash, and in case he does, he undoubtedly perpetrates a fraud upon the estate of his ward."

In Scott v. Gypsy Oil Co., it was held that the sale must be "in the manner and form provided by law". The law requires that a guardianship sale be for cash. Herein there is no innocent purchaser for value. Herein the record affirmatively discloses the trade.

As to the final transaction wherein Marcum secured the deed from Dan Bacon to his interest in the 1,400 acres of land, we ought to view the position occupied by the parties to the transaction. Marcum, the purchaser, was a lessee of an oil and gas mining lease to land involved in the final deed. Consequently he occupied a position of trust and confidence. It was his duty to account for production from the land. Dan Bacon, the grantor, was in the position of beneficiary of Marcum's accounting.

Pomeroy lays down the rule (sec. 848) that:

"Where an ignorance or misapprehension of the law, even without any positive incorrect or misleading words or incidental acts occur in a transaction concerning the trust between two parties holding close relations of trust and confidence injuriously affecting the one who reposes the confidence, equity will, in general, relieve the one who has thus been injured."

But Marcum, while occupying such position of trust and confidence, affirmatively represented, as to Dan Bacon's interest in the mineral rights so bartered away in violation of express statute and decision, "It isn't worth a dime." Whether Marcum's error in value be one of fact or one as to law, as to Dan Bacon's existing right and interest in the mineral rights, equitable relief ought to prevail in behalf of Dan Bacon, the illiterate, the uninformed. Moreover, I do not believe, under the record evidence, that

Marcum's act constituted an error. The judgment below stamped it as fraud—grossest overreaching. Not only was Marcum a lessee of Dan Bacon's interest in the land, but, in addition, he was Dan Bacon's cotenant. He had purchased a half interest in the allotment of Silly Frazier, which by devolution had gone to Eli and to Ellen in equal shares. This fact emphasized the confidential relation existing between Marcum and Dan Bacon; that relation demanded a full disclosure on the part of Marcum and the utmost in fair dealing—the burden of evidence as to value was upon him, the purchaser, not upon Bacon, as the majority opinion holds. Hoyt v. Lightbody, 98 Minn. 189, 108 N. W. 843, 116 A. S. R. 358.

Brink v. Canfield, 78 Okla. 189, 187 Pac. 223, concerned a full-blood Indian's deed in the procurement of which the Indian was deceived as to his rights as an heir as here, and it was held "the court will unhesitatingly grant the heir of the wronged party relief against those chargeable with such unconscionable practices."

A conspiracy to defraud was relied upon by the plaintiff herein, the alleged purpose being to fraudulently secure the royalty interest in Ellen Bacon's lands. The parties were said to be Marcum and the guardian of Ellen's estate. I think the conspiracy was proven, for the grossest fraud was shown by the record of the guardianship sale of the royalty to Ellen Bacon's land. Even the guardian, who, by law, existed for the purpose of protecting the estate for the ward, recorded a deed within one year after his guardianship sale, whereby he himself held record title to property theretofore sold for his ward. The record shows that the guardian testified he "had it sold" prior to the guardianship sale.

I think the fraud proven followed Marcum throughout his acts in acquiring the interest of Dan Bacon to the 1,400 acres of land for the paltry sum of $1,000.

I dissent to the majority opinion.