## LUSK et al. v. CARTER OIL CO. et al.

No. 23396.　June 4, 1935.

William G. Davisson, for plaintiffs in error.

James A. Veasey, Forrest Darrough, Earl Appleton Brown, Dolman, Dyer & Dolman, Sigler & Jackson, and Stephen A. George, for defendants in error.

RILEY, J. This case involves the question of the title and right to certain portions of the income from royalty interest in certain lands formerly the property of D. H. Lusk, being the N.E.¼, section 33, township 1 S., range 3 W., in Carter county. D. H. Lusk died on or about December 23, 1923. At the time of his death he was the owner of all the surface rights and interest in said land. There were at that time certain valid oil and gas mining leases covering said land providing for a 1/8 royalty. At the time of his death D. H. Lusk owned 3/8 of the royalty interest. Said land was the homestead of Lusk. He left surviving him as his heirs. his widow, Leonard E. Lusk, and eight children. These are the plaintiffs in this action. The widow was appointed administratrix of the estate of D. H. Lusk. It is conceded that she continued to possess and occupy the land as a homestead until August 1, 1929.

It is conceded that the widow inherited an undivided 1/3 interest in the surface rights and 1/3 of the 3/8 oil and gas royalty rights, and that each child inherited an undivided 1/12 interest in the surface and 1/32 of the royalty or mineral rights, subject to the homestead rights of the widow.

Between February 5, 1924, and January 27, 1927, the widow, Leonard E. Lusk, who it appears was twice married after the death of D. H. Lusk, first to H. O. Clayton and then to Charlie Reed, sold or attempted to sell certain of the royalty or mineral rights as follows: February 6, 1924, 1/32 to R. F. and J. F. McCrory; February 7, 1924, 1/32 to C. F. Dillingham (now owned by R. F. and J. F. McCrory); April 10, 1924, 1/80 to Sidney J. and C. C. Miller; March 19, 1925, two barrels of oil per day to Eva Hefner; June 22, 1925, one barrel

of oil per day to Freeman Galt; October 14, 1926, 3/80 to H. T. Vernon; and January 26, 1927, one barrel of oil per day to H. T. Vernon.

In addition thereto, D. H. Lusk, one of the children, who had on March 25, 1925, attained his majority, sold or attempted to sell his 1/32 interest in the mineral rights to Berta B. Holloway, and on April 7, 1927, Mrs. Lusk, for the purpose of confirming and effectuating the attempted sale by D. H. Lusk, executed a conveyance of the 1/32 interest to Berta B. Holloway. Whatever was conveyed thereby is now owned by C. D. Williams.

On May 13, 1927, Mrs. Lusk-Reed and six of the children, all of whom were then minors, commenced an action in the district court of Carter county, to cancel all the conveyances or assignments of parts of the oil and gas royalties made by Mrs. Lusk-Reed. The Humble Oil & Refining Company was then the owner of the oil and gas lease.

In that action plaintiffs alleged the homestead character of the land, and that the widow was then occupying same as a homestead. It was claimed that, notwithstanding the so-called assignment, plaintiffs were entitled to all the income from the land because of the homestead character thereof.

The defending owners of such assignments answered, setting same up, and prayed for judgment adjudging them to be the absolute owners of such portion of said mineral interests represented by their respective assignments.

The issues as joined in that case were tried to the court upon an agreed statement of facts, resulting in a general finding and judgment for defendants. An appeal to this court was attempted, but the attempted appeal was dismissed. Lusk v. Humble Oil & Ref. Co., 140 Okla. 152, 282 P. 311.

This action was commenced September 27, 1930, and for the same general purposes.

All the eight children join in this action. The two who were not plaintiffs in the former action are Gladys Adine Lusk, now Murray, and L. H. Lusk, both adults. Five of the children are minors and join in the action by their guardian, Mrs. L. E. Lusk, now Reed. Mrs. Lusk-Reed also joins in the action as administratrix.

The principal difference between this action and the former one is that herein it is alleged that Mrs. Lusk-Reed wholly aban-

doned the land as a homestead on or about August 1, 1929.

The Carter Oil Company, having become the owner of the oil and gas lease, is made one of the defendants in the place of the Humble Oil & Refining Company. Defendants in this action all set up the conveyances of the respective interests represented by the assignments of royalty interests made by Mrs. Lusk-Reed and L. H. Reed. They also plead the judgment in the former action as an adjudication of the rights of the parties. They also specifically deny that the land in question was abandoned as a homestead by Mrs. Lusk-Reed.

The issues as thus joined were tried to the court without a jury, resulting in a finding of "all of the issues in favor of defendants and against the plaintiffs." Judgment was rendered in accord therewith, and plaintiffs appeal.

The first proposition presented is that the evidence discloses that plaintiffs Gladys Adine Lusk, now Murray, Francis Irene Lusk, now Springer, Jessie Pryor Lusk, Willie Faye Lusk, Barney Willard Lusk, Aline Lusk, and J. Lusk are children and heirs of D. H. Lusk, deceased; that they have never disposed of their interests in the property involved, or the royalties accruing therefrom, and that the conveyances executed by their coplaintiff, Mrs. Leonard E. Lusk, now Reed, convey no part of their interest in said estate.

That is true. There is no contention that any of the children named are not heirs of said D. H. Lusk. It is conceded that they are, and that each of the children inherited an undivided 1/12 interest in the surface, and a 1/32 of the 1/8 royalty interests in the land. The children above named have never sold or disposed of any of their interests. One adult child, L. H. Lusk, has attempted to sell his 1/32 interest in the royalty. But whatever interest the children inherited from their father was at all times subject to the homestead rights of the widow, Mrs. Leonard Lusk, now Reed.

The homestead rights of the widow are defined by section 1224, C. O. S. 1921 (sec. 1223, O. S. 1931), as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

Where the title to the homestead is in the husband upon his death, leaving a widow and more than one child, the title vests 1/3 in the surviving widow and 2/3 to the surviving children.

But, under the homestead law, the widow, in addition to inheriting the 1/3 interest in the fee, has the right to use and occupy the whole homestead together with all the rents, profits, and income therefrom. The children have no homestead rights as against the widow. So long as she elects to use, occupy, and possess the land as a homestead, the children have no claim to any of the rents, profits, or income therefrom.

In Lawley et al. v. Richardson et al., 101 Okla. 40, 223 P. 156, it is held:

"The surviving widow of a deceased person, occupying land as a homestead under the laws of the state, is entitled, as against the heirs of decedent, to receive, collect, and use, in her own right, the royalties arising from oil and gas wells developed under a lease executed prior to the death of deceased, and such royalties, during the continuance of the homestead do not constitute a trust fund for all of the heirs of decedent."

See, also, Tarman v. Pearce, 168 Okla. 348, 33 P. (2d) 203.

It is clear that none of the children had any right in or to any of the money accruing from the royalty or other income from the land in question as long as Mrs. Leonard E. Lusk, now Reed, used and occupied the land as a homestead.

It is next contended that Mrs. Reed had a right to abandon the property as a homestead, and that when she did so the heirs then became entitled to the royalties thereafter accruing on the basis of their respective rights and interests. This is also probably true.

In Re Gardner's Estate, 122 Okla. 26, 250 P. 490, it is said:

"Thus it is clear that the right to possess and occupy the homestead is a special individual right given to a surviving husband or wife, and is separate and distinct from the exemption right given to the head of a family as a protection against creditors."

It was there held:

"The right of a survivor to occupy and live upon the homestead is superior to the right of coheirs to a property interest in the estate. The property interest of the

heirs is suspended during the occupancy of the homestead by the survivor. Where the homestead is one-quarter of an acre or less, though it may be occupied for business as well as residence purposes, and its value exceeds $5,000, the survivor is entitled to an undisturbed occupancy thereof as against coheirs to the estate."

In McCaffey v. Mulky, 115 Okla. 44, 241 P. 480, it is held:

"Therefore, the effect of section 1224, Comp. St. 1921, is to continue the homestead benefits in favor of the surviving spouse so long as such surviving spouse may elect to assert the right."

Mathews et al. v. Sniggs et al., 75 Okla. 108, 182 P. 703, in effect holds that the surviving widow with a minor child may abandon the homestead and convey her inherited interest therein, and that purchaser thereof may have possession as against the subsequent claim of homestead interest. Therein it was said:

"Obviously, therefore, the statute authorizing the surviving wife, and perhaps the minor children, to occupy the homestead for the period fixed in the statute has no application; their permanent removal from the state constituting an abandonment of the homestead."

In Bailly et al. v. Farmers St. Bk., 35 S. D. 122, 150 N. W. 942, cited by defendants in error, wherein the court had under consideration a section of the statute identical with section 1224, C. O. S. 1921, it is held:

"The general homestead right ceases on the death of the owner leaving a wife and surviving children, except as provided by Pol. Code, section 3231, declaring that on the death of either spouse the survivor may continue to possess the homestead until it is otherwise disposed of according to law, and on the death of both the children may continue to possess the same until the youngest becomes of age, and the surviving wife may determine whether the homestead right shall be retained or abandoned."

It seems to be conceded by both parties that the surviving widow may abandon the homestead effective as to herself and the minor children. 13 R. C. L. 652; Belt v. Bush, 74 Okla. 94, 176 P. 935. Cases are cited by both parties which so hold.

It follows that when the homestead is abandoned by the widow, she is no longer entitled to collect, receive, and retain all the rents, profits, and royalties therefrom. If upon abandonment of the homestead by the widow she has not precluded herself therefrom by sale or conveyance of the prop-

erty or royalty interests which she inherited from her deceased husband, she is entitled to receive her proper portion thereof. But the balance should go to the other heirs in proportion to their inherited interests.

But in this case one of the issues was whether Mrs. Lusk-Reed had in fact abandoned the premises as a homestead.

The finding of the court, being "all of the issues in favor of defendants and against the plaintiffs", included a finding against plaintiffs on that issue. At the close of the evidence the court stated from the bench what its holdings would be, and among other things said:

"The court further holds that the plaintiff Mrs. Leonard Lusk, now Reed, has not in good faith abandoned the premises in question as her homestead."

It is earnestly contended that the evidence clearly shows that she has in fact abandoned the premises as a homestead.

Plaintiffs alleged in the petition that Mrs. Lusk-Reed had abandoned the premises as a homestead on or about August 1, 1929. This action was commenced September 23, 1930, and tried April 20, 1931.

Mrs. Lusk-Reed was called as a witness for plaintiffs and testified quite positively that she had abandoned the premises as a homestead from and after August 1, 1929. Her testimony, in part, on that question, is:

"Q. I will ask you to tell the court whether or not you were living on the property that is involved in this lawsuit. A. No, sir, I am not, I am living on Mr. Joe Jennings' place. Q. Who owns the house in which you live? A. I do. Q. How long has it been since you lived on the land described in the petition? A. August 1, 1929. Q. Since that time where have you lived? A. I have been in Borger, Davis, Sulphur, County line and near Ratliff. Q. You have not lived on this property since August, 1929? A. No, sir. Mr. George: Objected to as leading and suggestive. The Court: I will let her answer, go ahead. Mr. Davisson: Q. When you moved from place to place, to the various places did you move your furniture? A. Yes, sir. Q. Did these minor children live with you? A. Yes, sir. Q. When you left this property in August, 1929, I will ask you to tell the court if it was your intention to abandon the property permanently? A. Yes, sir, it certainly was. Q. Did you at that time, or have you since that had any intention of going back to it as a home? A. No, sir, I have not. Q. Do you now claim it as your homestead? A. No, sir, I do not. Q. Have you at any

time since you left in August, 1929, claimed it as your homestead? A. No, sir. Q. Who is living on the property now? A. My three married children, two girls and one boy, Adine Murray, Irene Stringer and L. H. Lusk."

There is other evidence to the effect that she had not lived upon the land after August, 1929.

She also testified that she had not received any rent or royalty from the premises after October, 1929.

On cross-examination, however, she admitted that she had rented the surface of the premises to the Carter Oil Company for a two-year period ending November 1, 1932, for $160 per year; that the rent had been paid for the year 1931; $140 had been paid to a sanitarium for the care of some of the minor children; the balance, about $26, was paid to Mrs. Reed.

There is uncontradicted evidence to the effect that Mrs. Lusk-Reed had assigned the rent to accrue under the lease to the Carter Oil Company for the year ending November 1, 1932, to J. E. Sullivan, for which she obtained a small house, in which she was living at the time of the trial, located on land adjoining the premises here involved. The balance was applied upon an old grocery account.

Mrs. Reed testified that she owned the small house and had intended to move it on a lot she owned in Poolville. She testified that she had not acquired a homestead elsewhere. Mrs. Reed made no showing whatever that she placed the 2/3 of rent from the surface into her account as administratrix, or had in any way accounted therefor to the county court as guardian of the minor children.

The Constitution, section 1, art. 12, specifically provides that "any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

While Mrs. Lusk-Reed testified quite positively that she had abandoned the homestead and did not claim and did not intend in the future to return to the premises, it is quite clear that she did not abandon the rents and profits therefrom as to the surface right. Her acts and conduct were entirely inconsistent with her testimony.

We are not inclined to say that the finding of the court was against the clear weight of the evidence.

One of the cases cited by plaintiffs in er-

ror, Tittle v. Wade, 129 Okla. 228, 264 P. 200, holds:

"On appeal it is the duty of the court to approve the judgment of the court below in a case triable before the court, if it is not clearly against the weight of the evidence, but if it is against the clear weight of the evidence, the court should render such judgment as the court below should have rendered."

This rule is well established, and thereunder the judgment in this case should be affirmed.

But one other question we think should be considered in view of the contention made and the holding of the trial court.

It is contended by defendants in error that the former judgment is res adjudicata and definitely established their title to the respective interests claimed.

The trial court did hold that the former judgment was res adjudicata as to the instruments sought to be canceled, viz., the various assignments of sales of royalty interest made by Mrs. Lusk-Reed. To that extent the trial court was correct, but the former judgment is res adjudicata only to the extent of the rights of the parties so long as the land continues to be a homestead. The issues in the former case differ from those in the instant case on this one vital point, in that in the former case plaintiffs asserted that the land was then still the homestead, and in this case they assert that it was not, though the trial court found against them.

A different situation may arise when the land ceases to be a homestead.

Mrs. Lusk-Reed and L. H. Lusk admit in their briefs that they as individuals are bound by their assignments, and admit that they, as individuals, are not entitled, even in the future, to collect any of the royalties for their own benefit even after the land ceases to be a homestead. But the homestead rights of Mrs. Lusk-Reed might be terminated by her death prior to the time when the youngest child shall become of age. In that event the homestead rights would inure to the benefit of the minor children until the youngest child attains his or her majority. In such case they would be entitled to all the rents and profits accruing from the surface rights and at least 2/3, if not all, the income from the royalties. For this reason we are holding that neither the former judgment, nor even the one in this case, finally adjudicates all the rights of the parties for all time in the future.

If the land should in fact be abandoned as a homestead, then the children, or such of those who had not sold their interest, would be entitled to their respective shares of the income from all rents and royalties. In that event, if Mrs. Lusk-Reed has sold more than her 1/3 share of the royalties, the last to purchase, to that extent must lose, or look to her for redress.

The former judgment and the present one are binding and final only so long as the land remains a homestead.

The judgment is affirmed.

McNEILL, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.